# Illinois Official Reports

## Appellate Court

***People v. Teper*, 2016 IL App (2d) 160063**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. VALERIE S. TEPER, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-16-0063 |
| Filed<br>Rehearing denied | November 17, 2016<br>January 9, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Lake County, No. 15-CF-1007; the Hon. George Bridges, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Terry D. Slaw, of Alan H. Shifrin & Associates, LLC, of Rolling Meadows, and Albert L. Wysocki, of Law Offices of Albert L. Wysocki, P.C., of Waukegan, for appellant.<br><br>Michael G. Nerheim, State's Attorney, of Waukegan (Lawrence M. Bauer and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE SPENCE delivered the judgment of the court, with opinion. Justices Hutchinson and Birkett concurred in the judgment and opinion. |

**OPINION**

¶ 1      Following a stipulated bench trial, defendant, Valerie S. Teper, was convicted of unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2014)). She was sentenced to 18 months' probation and 12 months' periodic imprisonment, and she was also ordered to perform 150 hours of public service. On appeal, defendant argues that the trial court erred in denying her motion to dismiss the charge, pursuant to section 414 of the Illinois Controlled Substances Act (Act) (720 ILCS 570/414 (West 2014)). In certain situations, section 414 provides immunity from prosecution for possession of a small amount of a controlled substance for a person reporting or experiencing a drug overdose. See *id.* Defendant also argues that the trial court erred in failing to sentence her to first-offender probation under section 410 of the Act (720 ILCS 570/410 (West 2014)).

¶ 2      We conclude that section 414 does not apply because the evidence of defendant's drug possession was not "acquired as a result of" (720 ILCS 570/414(c) (West 2014)) defendant "seeking or obtaining emergency medical assistance." Even otherwise, the statute would not extend immunity to defendant because the police had probable cause to arrest defendant based on evidence that was "not obtained as a direct result of" defendant "seeking or obtaining emergency medical assistance" (720 ILCS 570/414(e) (West 2014)). In other words, defendant is not entitled to immunity under the plain language of section 414(c), and even if she were, section 414(e) would prohibit the extension of that immunity because the police had probable cause to arrest her based on information the police acquired before she obtained emergency medical assistance. We further conclude that the trial court did not abuse its discretion in sentencing defendant. Therefore, we affirm.

¶ 3                                   I. BACKGROUND

¶ 4      On June 3, 2015, defendant was charged by indictment with unlawful possession of a controlled substance for unlawfully possessing less than 15 grams of heroin (720 ILCS 570/402(c) (West 2014)). She was also charged with unlawful possession of hypodermic syringes (720 ILCS 635/1(a) (West 2014)) for possessing two hypodermic syringes to inject controlled substances.

¶ 5      On July 23, 2015, defendant filed a motion to dismiss the charges. She alleged as follows. On April 16, 2015, two people walked into the Park City police department and told an officer that a driver was slumped over in her car on Route 120. When officers arrived at the scene, they found defendant slumped over in the driver's seat. She was unresponsive and had difficulty breathing. The officers believed that defendant had overdosed on heroin, and an officer injected her with Narcan,[1] a medication that blocks the effects of opiates. Defendant then began to breathe at a normal rate and became conscious. After removing her from the car, the officers found about one gram of heroin and several hypodermic needles.

¶ 6      Defendant cited section 414, which is entitled "Overdose; limited immunity from prosecution" and provides, in relevant part:

---

[1]Narcan is the brand name for naloxone. *Isham v. Colvin*, No. 13-2377, 2015 WL 691411, at *10 n.24 (D. Minn. Feb. 8, 2015).

"(b) A person who, in good faith, seeks or obtains emergency medical assistance for someone experiencing an overdose shall not be charged or prosecuted for Class 4 felony possession of a controlled, counterfeit, or look-alike substance or a controlled substance analog if evidence for the Class 4 felony possession charge was acquired as a result of the person seeking or obtaining emergency medical assistance and providing the amount of substance recovered is within the amount identified in subsection (d) of this Section.

(c) *A person who is experiencing an overdose* shall not be charged or prosecuted for Class 4 felony possession of a controlled, counterfeit, or look-alike substance or a controlled substance analog *if evidence* for the Class 4 felony possession charge *was acquired as a result of the person seeking or obtaining emergency medical assistance* and providing the amount of substance recovered is within the amount identified in subsection (d) of this Section.

(d) For the purposes of subsections (b) and (c), the limited immunity shall only apply to a person possessing the following amount:

(1) less than 3 grams of a substance containing heroin;

* * *

(e) The limited immunity described in subsections (b) and (c) of this Section shall not be extended if law enforcement has reasonable suspicion or probable cause to detain, arrest, or search the person described in subsection (b) or (c) of this Section for criminal activity and the reasonable suspicion or probable cause is based on information obtained prior to or independent of the individual described in subsection (b) or (c) taking action to seek or obtain emergency medical assistance and not obtained as a direct result of the action of seeking or obtaining emergency medical assistance. Nothing in this Section is intended to interfere with or prevent the investigation, arrest, or prosecution of any person for the delivery or distribution of cannabis, methamphetamine or other controlled substances, drug-induced homicide, or any other crime." (Emphases added.) 720 ILCS 570/414 (West 2014).

¶ 7    In her motion to dismiss, defendant argued that section 414 applied because she was experiencing an overdose, and the evidence for her possession charge was acquired as a result of a person seeking or obtaining emergency medical assistance. Defendant argued that subsection (e) was inapplicable because, prior to or independent of defendant obtaining emergency medical assistance, the police had not learned any information that would have given them reasonable suspicion or probable cause to detain, arrest, or search her.

¶ 8    A hearing on the motion took place on October 15, 2015. Officer Kenneth Stoves of the Park City police department testified that on April 16, 2015, at around noon, the police department was notified by someone who came into the department and by various phone calls that a driver was slumped over the steering wheel of a vehicle in traffic. Officer Stoves arrived at the scene at the same time as another officer. There was a significant amount of traffic, and the vehicle was stopped "in the westbound lanes," which was an offense. Defendant was unresponsive and barely breathing, and her skin was so pale that it was almost blue. Officer Stoves saw two baggies of a brown, rock-like substance, which he believed was heroin. Officer Stoves also observed several hypodermic syringes and the bottom of a can with cotton in it, which was indicative of heroin use. Based on defendant's condition and what he saw inside the vehicle, Officer Stoves believed that she was experiencing an overdose. He therefore

administered Narcan. Defendant regained consciousness after a while, and she was then taken out of her car and transferred to a hospital via ambulance. The suspected drugs weighed about one gram.

¶ 9 Officer Dwayne Harrell testified that he arrived at the scene at the same time as Officer Stoves. There was normal noon "rush hour" traffic, and the car was not "parked correctly." Defendant was slumped over and beginning to turn blue. She was unresponsive and had labored breathing. A couple of needles and a substance in the cup holder were in plain sight, and these objects led the officers to believe that defendant's condition was the result of a "drug episode."

¶ 10 At the hearing, defendant argued that section 414 applied because the officers were responding to reports of an unresponsive person, she was clearly experiencing an overdose, and she was clearly receiving emergency medical assistance. Defendant argued that she was not required to have sought medical assistance for herself, as it would be difficult for anyone experiencing an overdose to seek such assistance and the statute uses the phrase "seek or obtain." Defendant maintained that she was therefore immune from prosecution under section 414.

¶ 11 The State argued that the statute's purposes are to protect a person who seeks medical treatment for an overdose and to protect a third party who calls for help or accompanies a person experiencing an overdose. The State asserted that this situation was different because the police had probable cause to detain defendant before they arrived at the scene, based on her being in her stopped car in the middle of traffic. The State argued that the police also had probable cause upon their arrival, as they observed needles and drugs contemporaneously with seeing defendant slumped over.

¶ 12 The trial court stated as follows. The statute was put in place to encourage everyone to seek medical attention for drug overdoses, and it provides immunity for possession of small amounts of drugs found in such situations. The statute also has a limiting provision that, if officers have probable cause or a reasonable articulable suspicion to detain or arrest a person, the statute's immunity provision will not apply. Here, there was a stopped vehicle on a roadway and the police received information that the driver was unresponsive. Defendant took the position that it was clear from the officers' initial observations that this was a drug overdose situation because she was unresponsive. However, there were a number of things that the police could have been considering, such as alcohol intoxication. The officers were not aware of why defendant was unresponsive until they observed the drugs and paraphernalia in the vehicle, and based on their training, they then believed that she was likely overdosing. At that point, they administered Narcan to her. The "triggering fact" for defendant obtaining emergency medical assistance did not occur until the officers noticed the drugs and paraphernalia, which gave them probable cause. The trial court therefore ruled that section 414 did not apply, and it denied defendant's motion to dismiss.

¶ 13 A stipulated bench trial took place on November 19, 2015. The parties asked that the trial court take judicial notice of the testimony from the hearing. They further stipulated that the lab report on the suspected drugs indicated that it was four-tenths of a gram of heroin. The trial court found defendant guilty of unlawful possession of a controlled substance and not guilty of unlawful possession of hypodermic syringes.

¶ 14 On December 11, 2015, defendant filed a motion for judgment notwithstanding the verdict or, alternatively, for a new trial. She argued that the trial court erred in denying her motion to dismiss pursuant to section 414 and that she was not proven guilty beyond a reasonable doubt.

¶ 15 The trial court denied the motion on January 14, 2016, and then proceeded to the sentencing hearing. The State recommended that the trial court sentence defendant to six months' imprisonment in the Lake County jail and two years' probation. Defendant argued that, although she had a felony conviction and a few misdemeanor convictions, she had consistently been in treatment since the incident and was making great strides to overcome her addiction. She argued that, because she was residing in a "sober living house" and working, putting her in jail would not serve a good purpose. Defendant maintained that she was eligible for probation under section 410 and that sentencing her under that section would allow her to comply with the probation without adding another felony conviction to her record.

¶ 16 The trial court stated as follows. Defendant needed to get treatment and overcome her addiction because, otherwise, the next time she overdosed there might not be anyone to help. This was not a situation justifying imprisonment, but defendant did have a prior felony. Therefore, the trial court sentenced her to 18 months' felony probation and 12 months' periodic imprisonment, with release for treatment, probation obligations, and public service hours. Defendant was to perform 150 hours of public service.

¶ 17 Defendant timely appealed.

¶ 18                                    II. ANALYSIS
¶ 19                                    A. Section 414
¶ 20 Defendant first argues that the trial court erred in denying her motion to dismiss under section 414. Defendant argues that the legislature's intent in enacting section 414 was to provide individuals with immunity from prosecution for possessing a small amount of drugs in the case of an overdose. Defendant maintains that the legislature wanted to encourage people to call 911 if they were either overdosing or observing another person overdosing and to thereby save lives.

¶ 21 According to defendant, the trial court incorrectly reasoned that, because the officers were not aware that defendant was overdosing until after they arrived at the scene, the limited immunity from prosecution did not apply to her. Defendant argues that the drugs were found not independently but as a direct result of her obtaining emergency medical assistance. Defendant contends that the officers were following up on reports of an unresponsive person and that they did not have to be specifically told that the person was experiencing an overdose. Defendant takes the position that she "obtained" emergency medical assistance not when the officers administered Narcan but earlier, when the officers first arrived at the scene. Defendant argues that a contrary interpretation would provide immunity in a scenario where a paramedic administers Narcan before the police arrive but not in a situation where the police show up first.

¶ 22 The State argues that the trial court correctly denied defendant immunity from prosecution under section 414 for two reasons. First, defendant did not actively "seek" or "obtain" emergency medical assistance for her drug overdose, as the statute requires. Rather, she was the passive, unresponsive recipient of the assistance that the officers determined she needed to reverse her drug overdose. Second, having been called to investigate a car stopped in traffic,

the officers had a "reasonable suspicion or probable cause to detain, arrest, or search" (see 720 ILCS 570/414(e) (West 2014)), independent of treating defendant's drug overdose.

¶ 23 The State points out that the public act enacting the statute has a preamble that states, in relevant part:

"WHEREAS, Drug-overdose deaths are the second leading cause of accidental death in the nation and deaths have increased significantly in recent years, in both the Chicago Metropolitan Area and across Illinois; and

WHEREAS, The General Assembly finds that drug-overdose deaths could be substantially decreased if immunity from criminal prosecution for Class 4 felony violations of the Illinois Controlled Substances Act and Class 3 felony violations of the Methamphetamine Control and Community Protection Act were granted to a person possessing a small amount of the drug who, in good faith, seeks emergency medical assistance for someone experiencing a drug-related overdose and if this immunity were granted for the same Class 4 felony violations of the Illinois Controlled Substances Act and the Class 3 felony violations of the Methamphetamine Control and Community Protection Act to a person who is experiencing a drug-related overdose ***." Pub. Act 97-678, § 5 (eff. June 1, 2012) (adding 720 ILCS 570/414).

¶ 24 The State argues that neither section 414's plain language nor the public act's statement of legislative intent supports defendant's assertion that she is entitled to immunity. The State notes that section 414(c) provides immunity if evidence of the drug possession was discovered "as a result of the person seeking or obtaining emergency medical assistance." 720 ILCS 570/414(c) (West 2014). The State contends that, as shown by their dictionary definitions, the words "seek" and "obtain" require volition on the part of a person and that here defendant did not seek or obtain emergency medical assistance but passively received it as a result of citizens' reports to the police that a car was stopped in the street with an unresponsive driver. According to the State, requiring the party in need of emergency medical assistance to actively seek it is consistent with the legislature's intent, as the public act states that it wanted to decrease drug overdose deaths by providing immunity to anyone who "seeks emergency medical assistance for someone experiencing a drug-related overdose" and to the person "who is experiencing a drug-related overdose." Pub. Act 97-678, § 5 (eff. June 1, 2012). The State asserts that it would serve no purpose to provide immunity to someone who receives emergency medical assistance while unconscious, like defendant, because she could be neither encouraged nor discouraged from acting in her own self-interest.

¶ 25 The State also argues that defendant is disqualified under section 414(e). It points out that the police were called to investigate a car stopped in traffic with an unresponsive driver and that, upon arrival, the officers immediately found evidence of heroin use. The State argues that this is a classic example of the police "community caretaking" function. The State analogizes this case to *People v. McDonough*, 239 Ill. 2d 260 (2010). There, an officer observed a car stopped on the shoulder of a busy highway, and he stopped to see whether the occupants needed any assistance. *Id.* at 262-63. He activated his lights for safety because it was dark and there was a lot of traffic. *Id.* When the defendant rolled down the driver's window, the officer smelled alcohol on his breath. *Id.* at 263. Our supreme court held that at this point the officer acquired the reasonable suspicion necessary to detain and investigate the defendant. *Id.* at 274. The State argues that the same principle applies here, in that the immediate discovery of drugs and paraphernalia provided probable cause to arrest defendant.

¶ 26    Defendant responds that the State's argument that she did not seek or obtain emergency medical assistance due to her unconscious state should be stricken because the State cites only dictionary definitions and no proper legal authority. She argues that the argument is also without merit, as it is clear that she obtained emergency medical assistance through the efforts of third parties. Defendant argues that the clear legislative intent of section 414 was to save lives from accidental drug overdoses and that any ambiguity in the statute must be construed in her favor pursuant to the rule of lenity. See *People v. Williams*, 2016 IL 118375, ¶ 15 (the rule of lenity requires that any ambiguity in a criminal statute be resolved in the manner that favors the accused).

¶ 27    Defendant further argues that community caretaking is an exception to the fourth amendment and is not relevant in this case. Defendant argues that her position is not that the evidence should be suppressed under the fourth amendment because the officers seized her before they had probable cause but rather that she is immune from prosecution under section 414.

¶ 28    In construing a statute, our primary objective is to ascertain and give effect to the legislature's intent, which is best indicated by the statute's plain language. *People v. McFadden*, 2016 IL 117424, ¶ 26. We give undefined terms their ordinary and popularly understood meanings. *Skaperdas v. Country Casualty Insurance Co.*, 2015 IL 117021, ¶ 15. Words and phrases should be viewed in light of other relevant provisions of the statute, rather than in isolation. *Valfer v. Evanston Northwestern Healthcare*, 2016 IL 119220, ¶ 22. In determining the statute's plain meaning, we may also consider the reason for the law, the problems that the legislature intended to remedy, the purposes it sought to achieve, and the consequences of construing the statute in a particular manner. *McFadden*, 2016 IL 117424, ¶ 26. We will presume that the legislature did not intend an absurdity, inconvenience, or injustice. *Valfer*, 2016 IL 119220, ¶ 22. Statutory interpretation presents a question of law, which we review *de novo*. *McFadden*, 2016 IL 117424, ¶ 26. The construction of section 414 is an issue of first impression.

¶ 29    In looking at the statute as a whole, it is apparent that section 414 is a type of "good Samaritan" law. Our supreme court has noted that "the term 'good Samaritan' derives from the biblical parable found at Luke 10:30-37, and refers to 'one who compassionately renders personal assistance to the unfortunate.' " *Home Star Bank & Financial Services v. Emergency Care & Health Organization, Ltd.*, 2014 IL 115526, ¶ 40 (quoting Webster's Third New International Dictionary 979 (2002)). The broad purpose of good Samaritan statutes is to encourage the voluntary aid of others who are in imminent danger by removing the rescuer's fear of liability. See *id.*; *Parra v. Tarasco, Inc.*, 230 Ill. App. 3d 819, 825 (1992). Here, subsection 414(b) would clearly apply to a situation in which two friends are using drugs together, one person overdoses, and the friend calls for emergency assistance; the statute allows the friend to make the call without the fear that he or she will be charged for drug possession as a result, provided that the specific requirements of subsection 414(b) are met, including the small amounts of drugs.

¶ 30    Section 414(b) does not apply in this particular case because defendant did not seek or obtain emergency medical assistance for another. Rather, she was a "person who [was] experiencing an overdose," which makes section 414(c) potentially applicable. 720 ILCS 570/414(c) (West 2014). Under section 414(c), a person experiencing an overdose will not be charged with or prosecuted for a Class 4 felony possession of a controlled substance if the

"evidence [for the charge] was acquired as a result of the person seeking or obtaining emergency medical assistance." *Id.*

¶ 31 Contrary to defendant's assertion, the State did not forfeit its argument that defendant could not have sought or obtained emergency medical assistance when she was unresponsive. The State cited authority for construing statutes according to their plain meaning, and it was free to argue what that plain meaning was. Moreover, courts look to dictionaries to give words their ordinary and popularly understood meanings (see *LeCompte v. Zoning Board of Appeals*, 2011 IL App (1st) 100423, ¶ 29), so the State likewise could look to dictionary definitions to support its position.

¶ 32 In its brief and at oral argument, the State asserted that both "seek" and "obtain" require affirmative action. Merriam-Webster provides that the "[s]imple [d]efinition" of "seek" is "to search for (someone or something)"; "to try to find (someone or something)"; "to ask for (help, advice, etc.)"; and "to try to get or achieve (something)." Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/seek (last visited Aug. 23, 2016). Its definition of "obtain" is "to gain or get (something)[,] usually by effort" and "to continue to be accepted or in use." Merriam-Webster Dictionary, http://www.merriam- webster.com/dictionary/obtain (last visited Aug. 23, 2016).

¶ 33 Thus, to "seek" requires proactivity, and here defendant was unconscious, so she could not be said to have "sought" emergency medical attention. However, the definition of "obtain" is "to gain or get (something)" (*id.*), and here defendant "got" emergency medical attention. The definition further states that the gaining or getting is "usually by effort," but it does not state or imply that it must be by effort. Accordingly, defendant "obtained" emergency medical assistance from the police officers in that they injected her with Narcan and revived her. As such, contrary to the State's argument, section 414(c) can cover situations in which individuals passively obtain emergency medical assistance.

¶ 34 That being said, for immunity to apply, section 414(c) also requires that the evidence of the drug possession was "acquired as a result of" the person seeking or obtaining emergency medical assistance. See 720 ILCS 570/414(c) (West 2014). Thus, here the question remains whether the evidence of defendant's drug possession, namely, the substance appearing to be heroin, the hypodermic syringes, and the bottom of a can that had cotton in it, was "acquired as a result of" defendant obtaining emergency medical assistance. Defendant takes the position that she "obtained" emergency medical assistance when the officers first arrived at the scene, as opposed to when they administered Narcan. We disagree, as defendant did not "gain or get" emergency medical assistance when the officers arrived. Rather, defendant got the emergency medical assistance only after they viewed her, confirmed that she was unresponsive, and saw suspected drugs and drug paraphernalia in the car. At that point, they believed that she was suffering from a drug overdose, and they provided emergency medical assistance in the form of Narcan. In other words, the officers obtained evidence of defendant's drug use and possession by viewing objects in plain sight in the car when they arrived, and they did not acquire the evidence "as a result of" providing defendant with emergency medical assistance. Indeed, the officers provided emergency medical assistance as a result of viewing evidence of drug use and possession, not the reverse.

¶ 35 We do not find persuasive defendant's argument that such an interpretation is unreasonable because it allows a person to receive immunity if a paramedic administers Narcan before the police arrive but not if the police get to the scene first. Such a scenario presents too many

variables to provide a convincing contrast. For example, if a driver called for emergency medical assistance for a drug overdose before passing out, it is *arguable* that any evidence of drug possession subsequently collected would be a result of the driver seeking or obtaining emergency medical assistance, so immunity could *arguably* apply regardless of whether the police or an ambulance arrived first. That is, in the hypothetical, the driver sought emergency medical assistance, and thus anything the police viewed afterward would *arguably* be a result of the driver seeking that assistance. Even under the present facts, it is still *arguable* that, if paramedics had arrived before the police officers, the evidence of drug possession would not be a result of defendant obtaining emergency medical assistance, as the evidence was clearly and immediately visible before any assistance was administered. For immunity to apply under section 414(c), the evidence of drug possession must be "acquired as a result of the person seeking or obtaining emergency medical assistance," which did not occur here.

¶ 36    Even if, *arguendo*, section 414(c) applied in this case, we agree with the State that the exception in section 414(e) constitutes an independent bar to immunity. The State discusses the "community caretaking" doctrine in conjunction with section 414(e), but we agree with defendant that the doctrine is not directly relevant here, as defendant is not seeking to suppress evidence under the fourth amendment. See *People v. Luedemann*, 222 Ill. 2d 530, 546 (2006) ("Courts use the term 'community caretaking' to uphold searches or seizures as reasonable under the fourth amendment when police are performing some function other than investigating the violation of a criminal statute.").

¶ 37    Again, section 414(e) states that the immunity:

"shall not be extended if law enforcement has reasonable suspicion or probable cause to detain, arrest, or search the person described in subsection (b) or (c) of this Section for criminal activity and the reasonable suspicion or probable cause is based on information obtained prior to or independent of the individual described in subsection (b) or (c) taking action to seek or obtain emergency medical assistance and not obtained as a direct result of the action of seeking or obtaining emergency medical assistance." 720 ILCS 570/414(e) (West 2014).

¶ 38    The question here is whether the police had "reasonable suspicion or probable cause to detain, arrest, or search" defendant "for criminal activity and the reasonable suspicion or probable cause [was] based on information obtained prior to or independent of" defendant "taking action to seek or obtain emergency medical assistance and not obtained as a direct result of the action of seeking or obtaining emergency medical assistance." *Id.* As discussed, defendant never sought emergency medical assistance, and she did not obtain emergency medical assistance until the officers injected her with Narcan. Prior to that time, the officers observed defendant's condition and saw a brown, rock-like substance, syringes, and the bottom part of a can containing cotton that were in plain view in the car.

¶ 39    An officer has probable cause to arrest a person if he or she knows facts that would lead a reasonably cautious person to believe that the individual has committed an offense. *People v. Taylor*, 2016 IL App (2d) 150634, ¶ 49. In general, when an officer observes illegal drugs in plain view, the officer has probable cause to seize the contraband and arrest the vehicle's occupants. See *People v. Leggions*, 382 Ill. App. 3d 1129, 1134 (2008); *People v. Walters*, 256 Ill. App. 3d 231, 238 (1994). Thus, before rendering emergency medical assistance in the form of the Narcan injection, the officers here had probable cause to arrest defendant for unlawful possession of a controlled substance because they viewed defendant's condition and saw

suspected drugs and drug paraphernalia. Stated differently, the officers' probable cause was based on information they acquired before defendant obtained emergency medical assistance from them, and the evidence was not a direct result of defendant obtaining emergency medical assistance. See 720 ILCS 570/414(e) (West 2014). Accordingly, even if section 414(c) initially provided defendant with immunity, section 414(e) prohibited the application of that immunity. We therefore conclude that the trial court did not err in denying defendant's motion to dismiss the charges under section 414.

¶ 40                                    B. Defendant's Sentence

¶ 41        Defendant next argues that her sentence is excessive. She notes that, at the sentencing hearing, her counsel requested that she be sentenced to first-offender probation under section 410 of the Act (720 ILCS 570/410 (West 2014)). Her counsel argued that she was educated, was progressing in her recovery program, and had no prior drug-offense convictions. Defendant argues that, although the trial court commented at great length on her drug use and addiction, it did not mention the request for section 410 probation. Defendant contends that the trial court abused its discretion by not even considering or making findings regarding section 410 probation.

¶ 42        Section 410 states, in relevant part:

> "Whenever any person who has not previously been convicted of, or placed on probation or court supervision for any offense under this Act or any law of the United States or of any State relating to cannabis or controlled substances, pleads guilty to or is found guilty of possession of a controlled or counterfeit substance under subsection (c) of Section 402 or of unauthorized possession of prescription form under Section 406.2, the court, without entering a judgment and with the consent of such person, may sentence him or her to probation." *Id.*

If an individual successfully completes section 410 probation, he or she may have a conviction essentially expunged. See 720 ILCS 570/410(g) (West 2014). The trial court has the discretion to grant or deny section 410 probation. *People v. Miller*, 2014 IL App (2d) 120873, ¶ 34. If a sentence is within the statutory limits, it will not be labeled an abuse of discretion unless it is at variance with the spirit and the purposes of the law or is manifestly disproportionate to the offense's nature. *People v. Bryant*, 2016 IL App (1st) 140421, ¶ 14.

¶ 43        We conclude that defendant has forfeited her argument. To preserve a claim of a sentencing error, a defendant must make a contemporaneous objection and raise the issue in a written postsentencing motion. *People v. Walsh*, 2016 IL App (2d) 140357, ¶ 16. Here, although defendant requested section 410 probation during the sentencing hearing, she did not file any postsentencing motion, thereby forfeiting the issue for review.

¶ 44        Even if not forfeited, defendant's argument is without merit. As the State points out in its brief, "[a] sentencing judge is presumed to have considered all relevant factors, including the mitigating evidence presented, unless the record affirmatively shows otherwise." *People v. Chirchirillo*, 393 Ill. App. 3d 916, 927 (2009). Here, nothing in the record affirmatively shows that the trial court failed to consider section 410 probation. In fact, the trial court stated that it "considered the arguments and *recommendations* of the attorneys in this case." (Emphasis added.) We further find no abuse of discretion in not sentencing defendant to such probation, as defendant had a prior felony conviction and some misdemeanor convictions and the presentence investigation report found that defendant had a significant substance abuse

problem and was at a moderate risk to reoffend.

¶ 45                                    III. CONCLUSION

¶ 46        For the foregoing reasons, we affirm the judgment of the Lake County circuit court. As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal. 55 ILCS 5/4-2002(a) (West 2014); see also *People v. Nicholls*, 71 Ill. 2d 166, 179 (1978).

¶ 47        Affirmed.