NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 190730-U

NO. 4-19-0730

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 20, 2021
Carla Bender
4th District Appellate
Court, IL

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. FRANK L. BURKHART, Defendant-Appellant. | ) Appeal from the<br>) Circuit Court of<br>) Woodford County<br>) No. 19CF26<br>)<br>) Honorable<br>) Charles M. Feeney III,<br>) Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Harris and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*: By failing to raise the issue in his postsentencing motion, defendant forfeited the issue of whether, in the sentencing hearing, the circuit court treated elements of the offense as aggravating factors, and absent a clear and obvious error, the doctrine of plain error does not avert the forfeiture.

¶ 2    Defendant, Frank L. Burkhart, pleaded guilty to criminal sexual assault (720 ILCS 5/11-1.20(a)(4) (West 2016)), for which the circuit court of Woodford County sentenced him to 11 years' imprisonment. Defendant appeals on the ground that, in deciding on a prison term of 11 years, the court treated some elements of the offense as aggravating factors—in other words, defendant argues, the court inflicted upon him what case law calls a "double enhancement." We conclude that defendant has forfeited this sentencing argument and that, absent a clear or obvious double enhancement, the doctrine of plain error does not avert the forfeiture. Therefore, we affirm the judgment.

¶ 3                                    I. BACKGROUND

¶ 4            On June 12, 2019, defendant pleaded guilty to one count of criminal sexual assault

(720 ILCS 5/11-1.20(a)(4) (West 2016)) in return for the State's agreement to file a *nolle prosequi*

for the remaining two counts, which charged him with predatory criminal sexual assault (*id.*

§ 11-1.40(a)(1)). According to the factual basis, M.B. was 13 years old when defendant sexually

assaulted her. Defendant had been dating M.B.'s mother. After the mother died of a drug overdose,

defendant took M.B. into his care and began proceedings to adopt her. Sometime between August

7, 2017, and May 1, 2018, when defendant was 34, he placed his penis in M.B.'s vagina.

¶ 5            On August 23, 2019, in the sentencing hearing, the circuit court found no factors in

mitigation. The court then turned its attention to the factors in aggravation:

> "As to factors in aggravation, he has a prior history of criminal activity,
> somewhat limited. Sentence is necessary to deter others. While he was in a position
> of trust, that's already in the crime itself, so that's not an additional factor in
> aggravation. To a great extent I think that the quality of a society is measured by
> how it protects the least of these, those that are the aged, the very young, those that
> are incapable or have a reduced ability to protect themselves. And such as the
> victim. And [defendant] was given a great deal of responsibility, and it's referred
> to in the letters and in the statements regarding that he was the foster parent. He
> was given this most treasured aspect of our society in many respects, and that's our
> youth.
>
>                                    * * *
>
> [Y]ou stole something. You took away from your victim something she is
> never going to get back, that for the rest of her life she will have to live with the

- 2 -

fact that a person that, after all of the abuse and suffering that she has had to incur with her irresponsible mother, all of which you were aware of—her irresponsible mother, the fact that she was with you and treasured you and looked at you as a father figure, [and] she will forever have to deal with those issues. And that is, in part, demonstrated by the therapy she is undergoing now. And—but it's a natural consequence that—she's had something robbed from her. So the—given the nature of this situation, the defendant's understanding of the fragile and difficult situation in which his victim was in, the heinous nature of the act as set out in the level of offense that the legislature has assigned to this, the court is of the opinion that 11 years in the Illinois Department of Corrections is an appropriate sentence."

¶ 6    On September 18, 2019, defendant moved for a reconsideration of the sentence. He argued that, in imposing 11 years' imprisonment—a prison term that was closer to the maximum than to the minimum—the circuit court failed to give enough weight to such factors as his guilty plea, his limited criminal history, his full-time employment, and his state of intoxication when he committed the offense. See 730 ILCS 5/5-4.5-30 (West 2016) (providing that the sentencing range for criminal sexual assault is imprisonment for 4 to 15 years).

¶ 7    On October 21, 2019, in denying defendant's postsentencing motion, the circuit court remarked:

"And I'm not going to go through all of what I went through before in rendering a sentence, but I will say that this case is particularly egregious because of the situation in which the victim found herself. And you were fully aware of that and took advantage of that situation, in my opinion. You had a duty to protect this individual, although that's part of the situation—that's part of the charge here, is a

- 3 -

person of trust. But it's just—it can't help but be harmful to a juvenile. And even in the motion to reconsider here it mentions that [defendant] was under the influence of alcohol at the time. And in some respects maybe for some that's mitigating. But then [defendant] has a history with alcohol. He's had a prior DUI. And he blames this incident in no small measure upon the consumption of alcohol. And yet my recollection of the Presentence Investigation is that up until approximately March of this year he continued to drink. So if we're to believe that, you know, this terrible crime occurred as a result of consuming alcohol, it didn't have much impact on the defendant because he continued to consume and use drugs. So it was egregious conduct. And I did take into account his criminal history and the factors stated in the motion and—plus other factors. So the motion is denied."

¶ 8    This appeal followed.

¶ 9                                    II. ANALYSIS

¶ 10                          A. Holding a Position of Trust

¶ 11    Defendant pleaded guilty to criminal sexual assault as that offense was defined in section 11-1.20(a)(4) of the Criminal Code of 2012 (720 ILCS 5/11-1.20(a)(4) (West 2016)). One of the elements of the offense, so defined, was that he "[held] a position of trust, authority, or supervision in relation to the victim." *Id.* Necessarily, the legislature took that statutory element into account when establishing the range of punishment for criminal sexual assault: imprisonment for not less than 4 years and not more than 15 years. See *id.* § 11-1.20(b)(1); 730 ILCS 5/5-4.5-30(a) (West 2016). Holding a position of trust, then, could not logically be treated as an *aggravating* factor or as a factor that made the offense more egregious than it otherwise would

have been. Using a position of trust, in the first place, as a basis for making the statutory range of punishment what it is and then using the position of trust again, this time as a basis for elevating defendant's sentence, would be a "double enhancement." See *People v. Guevara*, 216 Ill. 2d 533, 545 (2005). In the sentencing hearing, the circuit court commented, "While [defendant] was in a position of trust, that's already in the crime itself, so that's not an additional factor in aggravation." Thus, the court explicitly acknowledged that because a position of trust was inherent in the offense, a position of trust could not be an aggravating factor.

¶ 12          Despite the circuit court's explicit acknowledgment of the rule against double enhancement, defendant contends that the court went ahead and violated that rule anyway by substituting the terms "responsibility" and "foster parent" for the statutory terms "trust, authority, or supervision" (720 ILCS 5/11-1.20(a)(4) (West 2016)). The court remarked in the sentencing hearing, "And [defendant] was given a great deal of responsibility, and it's referred to in the letters and in the statements regarding that he was the foster parent. He was given this most treasured aspect of our society in many respects, and that's our youth." What is the position of a foster parent if not a position of trust, authority, and supervision? Continuing in this vein, the court deplored that, for the rest of her life, the victim, M.B., would have to "live with *** the fact that she was with [defendant] and treasured [him] and looked at [him] as a father figure." In other words, M.B. trusted defendant with her safety, and she valued him and esteemed him as a daughter would her father. Defendant violated her confidence, her trust: that was the theme of the court's remarks. In defendant's view—a reasonable view—the only purpose in expatiating this way on the betrayal of the father-daughter relationship would have been to explain why his offense was especially egregious. Yet, the court had begun with an acknowledgment that considering the position of trust

as an aggravating factor would have been a double enhancement. As it turned out, this was a hollow acknowledgment, or so defendant argues.

¶ 13          Now let us examine the other alleged instance of double enhancement.

¶ 14                         B. Psychological Harm

¶ 15          Defendant complains that the circuit court further doubly enhanced his sentence by considering, as an aggravating factor, psychological harm to M.B. He cites *People v. Ehrich*, 165 Ill. App. 3d 1060, 1075 (1988), for his proposition that "psychological harm is generally considered to be inherent in the commission of criminal sexual assault."

¶ 16          1. *Defendant's Invocation of the Doctrine of Plain Error*

¶ 17          In neither the sentencing hearing nor in his postsentencing motion did defendant raise the issue of double enhancement. "To preserve a claim of a sentencing error, a defendant must make a contemporaneous objection and raise the issue in a written postsentencing motion." *People v. Teper*, 2016 IL App (2d) 160063, ¶ 43. Defendant admits that, in the circuit court, he failed to take either of those preservative measures. Even so, he requests us to address his two claims of double enhancement, contending that the circuit court committed plain errors by treating the position of trust and the psychological harm as aggravating factors.

¶ 18          The doctrine of plain error allows us, in our discretion, to take up the merits of a procedurally forfeited sentencing issue if "a clear or obvious error" was made in the sentencing hearing and if either of two propositions holds true: (1) the evidence in the sentencing hearing was so closely balanced that the error might have resulted in a more severe sentence than the defendant otherwise would have received or (2) the error, regarded in itself, was so inherently serious as to deny the defendant a fair sentencing hearing. *People v. Hillier*, 237 Ill. 2d 539, 545 (2010); see

also Ill. S. Ct. R. 615(b)(4) (eff. Jan. 1, 1967). Defendant maintains that both (1) and (2) are true in his case—he lays claim to both prongs of the plain-error doctrine.

¶ 19 Before reaching these two alternative prongs of the plain-error doctrine, we need to identify an error that is, from our own perspective, clear or obvious. See *Hillier*, 237 Ill. 2d at 545; *Henderson v. United States*, 568 U.S. 266, 274 (2013) (observing that, under Supreme Court case law, it is "enough that an error be 'plain' at the time of appellate consideration" (internal quotation marks omitted)); *People v. McLaurin*, 235 Ill. 2d 478, 497 (2009) ("not[ing] the similarity between our plain-error analysis and the parallel analysis under the federal rules"). The Illinois Supreme Court reminds us:

> "[T]hough it is often not expressed, short of a conclusion that an asserted error is a 'plain' one, the so-called plain error doctrine offers no basis to excuse a procedural default. [Citation.] The point is crucial, for while all plain errors are reversible ones, not all reversible errors are also 'plain' for purposes of Rule 615(a). [Citation.] Of course, to determine whether a purported error is 'plain' requires a substantive look at it. But if, in the end, the error is found not to rise to the level of a plain error as contemplated by Rule 615(a), the procedural default must be honored." *People v. Keene*, 169 Ill. 2d 1, 17 (1995).

Thus, the plainness of plain error is indispensable. It is not enough that the belatedly raised error is real and that, but for a procedural forfeiture, it is a reversible error. If the error is less than clear or obvious, the procedural forfeiture is unexcused, and the doctrine of plain error affords no relief. See *id.*

¶ 20 At the threshold, then, of the plain-error doctrine, we should decide whether the circuit court *clearly or obviously* inflicted upon defendant a double enhancement. Let us begin

with the element of holding a position of trust. As we have explained, defendant has a reasonable argument that the circuit court treated that element as an aggravating factor. The State, on the other hand, has a reasonable counterargument. The State cites *People v. Saldivar*, 113 Ill. 2d 256, 271-72 (1986), for the following proposition (to quote from the State's brief): "However, in determining an appropriate sentence, the trial court may consider the seriousness, nature, and circumstances of the offense, including the nature and extent of the elements of the offense."

¶ 21　　　　　That is an accurate account—nearly a verbatim quotation—of what *Saldivar* said. One of the cases on which *Saldivar* relied in this context was *People v. Tolliver*, 98 Ill. App. 3d 116 (1981). *Saldivar*, 113 Ill. 2d at 268-69 (citing *Tolliver*, 98 Ill. App. 3d 117-18). In *Tolliver*, the defendant had committed armed robbery by pointing a pistol at a grocery store manager's chest and by taking the manager's car and $30,000 in cash and checks. *Tolliver*, 98 Ill. App. 3d at 116-17. In deciding on a sentence of eight years' imprisonment, the circuit court considered, as aggravating factors, that the defendant had " 'threaten[ed] harm' " and that he had " 'receive[d] a large amount of money.' " *Id.* at 117. On appeal, the defendant argued that those were impermissible aggravating factors because armed robbery *inherently* involved the threat of harm and the taking of property. *Id.* Nevertheless, the appellate court found no abuse of discretion by the sentencing court. The appellate court explained:

> "It is permissible for a sentencing judge to consider the nature and circumstances of the offense, including the nature and extent of each element of the offense as committed by the defendant. The degree of force employed and the amount of money taken in a theft or robbery are relevant factors to consider when ascertaining the sentence to impose." *Id.* at 117-18.

¶ 22        Just as there can be degrees of force and degrees of financial deprivation, so can there be degrees of trust. *Cf. People v. Garcia*, 2018 IL App (4th) 170339, ¶ 42 (noting that, "even though the trial court considered the amount of the drugs involved as an aggravating factor, the court framed this factor within the context of determining the seriousness of the offense"). Arguably, the point the circuit court was making in defendant's sentencing hearing was that, in the circumstances of this case, a *great degree* of trust had been reposed in defendant. See *People v. Hibbler*, 2019 IL App (4th) 160897, ¶ 71 (explaining that "[a]nything and everything beyond the minimum conduct necessary for the defendant to be found to have engaged in criminal behavior is entirely appropriate for a sentencing court to consider"); *People v. McGath*, 2017 IL App (4th) 150608, ¶ 73 (noting prior holdings by the Fourth District that "factors inherent in the offense can sometimes be considered, along with other factors in aggravation and mitigation, as part of the nature and circumstances of the case"). Defendant knew that by becoming the foster parent of M.B., he—and he alone—was being entrusted with the care and protection of an especially "fragile" child, a child who had already been through a lot. After "all of the abuse and suffering" that M.B. had endured from "her irresponsible mother," M.B. "treasured [defendant] and looked at [him] as a father-figure." With the death of M.B.'s mother, it was just M.B. and defendant against the world. Defendant betrayed this great trust by sexually assaulting M.B. As a consequence, not only is M.B.'s concept of motherhood tainted, but now her concept of fatherhood is tainted as well. As the court put it, "she will forever have to deal with those issues." She has suffered psychological harm, as "demonstrated by the therapy she is undergoing now."

¶ 23        Defendant cites *Ehrich*, 165 Ill. App. 3d at 1075, for the proposition that "psychological harm is generally considered to be inherent in the commission of criminal sexual assault." *Ehrich* really does not say that, as defendant admits in his reply brief. *Ehrich* aside, it

would be reasonable and commonsensical to assume that most children who are sexually assaulted suffer psychological harm. It does not follow, however, that psychological harm is an *element* of criminal sexual assault—understanding "element" as "[a] constituent part of a claim that must be proved for the claim to succeed." Black's Law Dictionary (11th ed. 2019) (definition of "element"). "A double enhancement occurs when either (1) a single factor is used both as an element of an offense and as a basis for imposing a harsher sentence than might otherwise have been imposed, or (2) the same factor is used twice to elevate the severity of the offense itself." *Guevara*, 216 Ill. 2d at 545. Under *Guevera*, it is less than clear or obvious that considering psychological harm, a non-element, as an aggravating factor was a double enhancement.

¶ 24    In sum, defendant has failed to carry his burden of showing a clear or obvious error in the form of a double enhancement. Therefore, the procedural forfeiture of his claims of double enhancement will be honored. See *Keene*, 169 Ill. 2d at 17.

¶ 25                              III. CONCLUSION

¶ 26    On the ground of procedural forfeiture, we affirm the circuit court's judgment.

¶ 27    Affirmed.