Docket No. 109489.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
ROBERT G. McDONOUGH, Appellant.

*Opinion filed November 18, 2010.*

JUSTICE FREEMAN delivered the judgment of the court, with
opinion.
Chief Justice Kilbride and Justices Thomas, Garman, Karmeier,
Burke, and Theis concurred in the judgment and opinion.

## OPINION

Defendant, Robert G. McDonough, was charged in the circuit
court of Jersey County with driving under the influence of alcohol
(625 ILCS 5/11–501(a)(2) (West 2008)). Defendant filed a motion to
suppress evidence and quash arrest. The circuit court granted
defendant's motion and subsequently rescinded the statutory summary
suspension of his driver's license. The State appealed to the appellate
court (see 210 Ill. 2d R. 604(a)). A divided panel of the appellate
court reversed the circuit court's order to suppress evidence and
quash arrest and remanded the cause to the circuit court for further
proceedings. 395 Ill. App. 3d 194.

This court allowed defendant's petition for leave to appeal (210
Ill. 2d R. 315(a)). We now affirm the judgment of the appellate court,

albeit for a reason different from that upon which the appellate court relied, and remand the cause to the circuit court.

## I. BACKGROUND

The circuit court held an evidentiary hearing on defendant's motion to suppress evidence and quash arrest. The only witnesses who testified were Illinois State Trooper Greg Brunnworth and defendant. The hearing adduced the following testimony.

On October 10, 2008, at approximately 7:30 p.m., Trooper Brunnworth was on routine patrol in uniform in his marked squad car on Illinois State Route 100, east of Grafton. At that point the ordinarily north-south highway runs east-west along the Mississippi River. The busy highway has four lanes, with two lanes in each direction separated by a center median. A guard rail separates the southbound lanes from the river.

As Brunnworth traveled in the northbound lanes, he noticed an automobile stopped on the shoulder of the southbound lanes with its headlights off. The car had not been there 10 minutes earlier. Brunnworth did not observe anything unusual; he was not "curious" or "suspicious," nor did he "have a hunch" about anything. However, he decided to inquire whether the car's occupants needed assistance. Brunnworth turned his squad car around and approached the stopped automobile, which now had its emergency flashers activated. Brunnworth turned on his overhead oscillating emergency lights as he pulled up behind the automobile on the shoulder of the road. Brunnworth testified that he activated his emergency lights for his safety because it was dark and there was a "lot of traffic."

Brunnworth exited his squad car and approached the stopped automobile. Defendant was the driver and his wife was the front seat passenger. Brunnworth shined a flashlight into defendant's car and did not observe weapons or liquor. Brunnworth asked defendant "if everything was okay." Brunnworth testified that, at this point in their encounter, if defendant had displayed "a little sign that says I'm fine and I refuse to speak to you," Brunnworth "probably would have let him go." In contrast, defendant testified that when he saw the emergency lights, he did not feel free to leave and felt obligated to answer Brunnworth's questions.

Defendant rolled down the driver's window slightly and responded that he was waiting for a friend. "Within a matter of seconds," Brunnworth detected the odor of alcohol on defendant's breath. Brunnworth asked defendant "how much he had to drink," to which defendant responded "three." Brunnworth asked defendant to take some field sobriety tests to ensure that he could safely drive home. The police report stated that defendant failed the field sobriety tests. Although defendant believed that he could not refuse to perform the tests, he refused to perform the last test Brunnworth sought to administer, a Breathalyzer test. According to defendant: "I figured I was going to jail no matter what I did." Defendant acknowledged that Brunnworth never threatened him in any manner throughout their encounter. Although Brunnworth did not initially observe liquor when he shined his flashlight into defendant's car, the police report stated that defendant "had open alcohol in vehicle." Defendant was arrested.

On November 25, 2008, defendant filed a motion to suppress evidence and quash arrest. The hearing on the motion adduced the above-described testimony. At the close of the evidence, defendant argued that he was seized and that Brunnworth was not performing a community caretaker function because he "had no reason to believe that [defendant] was in need of assistance." The State responded that Brunnworth was performing a community caretaker function when he pulled up behind defendant's stopped automobile and that Brunnworth was justified in activating his emergency lights for safety reasons.

In January 2009, the circuit court granted defendant's motion to suppress evidence and quash arrest. In a written order, the court found that Brunnworth and defendant did not have a valid community caretaking encounter because Brunnworth activated his emergency lights. In March 2009, the circuit court denied the State's motion to reconsider.

On appeal, a divided panel of the appellate court reversed the circuit court's order to suppress evidence and quash arrest, and remanded the cause to the circuit court for further proceedings. 395 Ill. App. 3d 194. The appellate court posited that "the necessary condition precedent for the exclusionary rule's application is police misconduct. Thus, absent police misconduct, the exclusionary rule does not apply because there is no misconduct to deter." 395 Ill. App. 3d at 199. The appellate court assumed *arguendo* that Brunnworth's

activation of his emergency lights constituted a "seizure" in violation of the fourth amendment. However, the court reasoned that the exclusionary rule should not apply because that act did not constitute police misconduct. 395 Ill. App. 3d at 199-201. Justice Myerscough disagreed with the court's focus on the availability of the exclusionary rule as a remedy against this assumed violation of the fourth amendment, rather than determining whether the fourth amendment was violated in the first place. Justice Myerscough concluded that no fourth amendment violation occurred in this case. 395 Ill. App. 3d at 201-02 (Myerscough, J., specially concurring).

We allowed defendant's petition for leave to appeal (210 Ill. 2d R. 315(a)). Additional pertinent background will be discussed in the context of our analysis of the issues.


## II. ANALYSIS

### A. Alleged Fourth Amendment Violation

Before this court, defendant contends that the appellate court erred in reversing the circuit court's suppression order. Defendant assigns error to the appellate court's holding that Brunnworth's assumed fourth amendment violation did not constitute sanctionable police misconduct. Defendant argues that his improper seizure was, "by itself, sufficient police misconduct to trigger application of the exclusionary rule under the [Fourth] Amendment, regardless of the lack of additional acts of police misconduct."

In response, the State first contends that even if defendant were "seized" when Brunnworth activated his emergency lights, the seizure was reasonable pursuant to the community caretaker exception to the fourth amendment. The State alternatively contends that if we conclude that Brunnworth violated defendant's fourth amendment rights, the exclusionary rule should not apply in this case to bar admission of the evidence discovered as a result of that seizure. We agree with the State's first contention. The analyses of the lower courts, and the arguments of counsel before this court, require a thorough discussion of the pertinent legal principles.

We apply the standard of review adopted by the United States Supreme Court in *Ornelas v. United States*, 517 U.S. 690, 134 L. Ed. 2d 911, 116 S. Ct. 1657 (1996). In reviewing a circuit court's ruling

-4-

on a motion to suppress evidence, mixed questions of law and fact are presented. Findings of historical fact made by the circuit court will be upheld on review unless such findings are against the manifest weight of the evidence. This deferential standard is grounded in the reality that the circuit court is in a superior position to determine and weigh the credibility of the witnesses, observe the witnesses' demeanor, and resolve conflicts in their testimony. However, a reviewing court remains free to undertake its own assessment of the facts in relation to the issues presented and may draw its own conclusions when deciding what relief should be granted. Accordingly, we review *de novo* the ultimate question of whether the evidence should be suppressed. *People v. Jones*, 215 Ill. 2d 261, 267-68 (2005); *People v. Sorenson*, 196 Ill. 2d 425, 430-31 (2001).

## 1. *Reasonableness*

The fourth amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV; see also *Elkins v. United States*, 364 U.S. 206, 213, 4 L. Ed. 2d 1669, 1675, 80 S. Ct. 1437, 1442 (1960) (observing that fourth amendment applies to state officials through fourteenth amendment). Generally, stopping a vehicle and detaining its occupants constitute a "seizure" within the meaning of the fourth amendment, even if only for a brief period and for a limited purpose. *Brendlin v. California*, 551 U.S. 249, 255, 168 L. Ed. 2d 132, 138-39, 127 S. Ct. 2400, 2406 (2007); *Whren v. United States*, 517 U.S. 806, 809-10, 135 L. Ed. 2d 89, 95, 116 S. Ct. 1769, 1772 (1996).

The "essential purpose" of the fourth amendment is to impose a standard of reasonableness upon the exercise of discretion by law enforcement officers to safeguard the privacy and security of individuals against arbitrary invasions. *Delaware v. Prouse*, 440 U.S. 648, 653-54, 59 L. Ed. 2d 660, 667, 99 S. Ct. 1391, 1396 (1979); accord *Pennsylvania v. Mimms*, 434 U.S. 106, 109, 54 L. Ed. 2d 331, 335, 98 S. Ct. 330, 332 (1977) (observing that touchstone of fourth amendment analysis "is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security' "), quoting *Terry v. Ohio*, 392 U.S. 1, 19, 20 L. Ed.

2d 889, 904, 88 S. Ct. 1868, 1878-79 (1968). Therefore, a vehicle stop is subject to the requirement of reasonableness in all the circumstances. *Whren*, 517 U.S. at 810, 135 L. Ed. 2d at 95, 116 S. Ct. at 1772.

To enforce the fourth amendment standard of reasonableness, the United States Supreme Court "has interpreted the Amendment as establishing rules and presumptions designed to control conduct of law enforcement officers that may significantly intrude upon privacy interests." *Illinois v. McArthur*, 531 U.S. 326, 330, 148 L. Ed. 2d 838, 847, 121 S. Ct. 946, 949 (2001). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren*, 517 U.S. at 810, 135 L. Ed. 2d at 95, 116 S. Ct. at 1772; see *People v. Gonzalez*, 204 Ill. 2d 220, 227-28 (2003); *Carmichael v. Village of Palatine*, 605 F.3d 451, 456 (7th Cir. 2010) (collecting cases). However, the United States Supreme Court has made it clear that there are exceptions to the requirement of probable cause. When faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, the Court has found that certain general, or individual, circumstances may render a search or seizure reasonable based on less than probable cause. See *McArthur*, 531 U.S. at 330, 148 L. Ed. 2d at 847, 121 S. Ct. at 949 (and cases cited therein); *Carmichael*, 605 F.3d at 456 n.4. Thus, the reasonableness of a particular law enforcement practice is judged by balancing its promotion of legitimate governmental interests against its intrusion of fourth amendment interests, *i.e.*, the individual's right to personal security free from arbitrary interference by law enforcement officers. *McArthur*, 531 U.S. at 331, 148 L. Ed. 2d at 848, 121 S. Ct. at 950; *Prouse*, 440 U.S. at 654, 59 L. Ed. 2d at 667-68, 99 S. Ct. at 1396; *Gonzalez*, 204 Ill. 2d at 225.

However, not every encounter between the police and a private citizen results in a seizure. Courts have recognized three theoretical tiers of police-citizen encounters. The first tier involves an arrest of a citizen, which must be supported by probable cause. *People v. Smith*, 214 Ill. 2d 338, 352 (2005); *People v. Gherna*, 203 Ill. 2d 165, 176 (2003). The second tier involves a temporary investigative seizure conducted pursuant to *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). In a "*Terry* stop," an officer may conduct a

brief, investigatory stop of a citizen when the officer has a reasonable, articulable suspicion of criminal activity and such suspicion amounts to more than a mere "hunch." *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883; *Smith*, 214 Ill. 2d at 352; *Gherna*, 203 Ill. 2d at 177. The third tier of police-citizen encounters involves those encounters that are consensual. An encounter in this tier involves no coercion or detention and, therefore, does not implicate any fourth amendment interests. *People v. Luedemann*, 222 Ill. 2d 530, 544-45 (2006); *Gherna*, 203 Ill. 2d at 177.

## 2. *Community Caretaking*

In *Luedemann*, this court noted that several Illinois decisions had imprecisely referred to the third tier of police-citizen encounters as the "community caretaking" function. *Leudemann*, 222 Ill. 2d at 544-45 (citing cases). This court instructed that use of the label "community caretaking" to describe third-tier consensual encounters is incorrect. The United States Supreme Court first set forth the community caretaking exception in *Cady v. Dombrowski*, 413 U.S. 433, 37 L. Ed. 2d 706, 93 S. Ct. 2523 (1973). The Court explained that local law enforcement officers "frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady*, 413 U.S. at 441, 37 L. Ed. 2d at 714-15, 93 S. Ct. at 2528. Rather than describing a tier of police-citizen encounters, community caretaking refers to a capacity in which the police act when they are performing some task unrelated to the investigation of crime, such as helping children find their parents, mediating noise disputes, responding to calls about missing persons or sick neighbors, or helping inebriates find their way home. Courts use the term "community caretaking" to uphold searches or seizures as reasonable under the fourth amendment when police are performing some function other than investigating the violation of a criminal statute. Community caretaking describes an exception to the warrant requirement. *Luedemann*, 222 Ill. 2d at 545-46.

This court reasoned that if community caretaking were just another name for consensual encounters, there would have been no

need for courts to formulate the exception in the first place. We explained:

> "To be sure, a police officer acting in a community caretaking function can engage in a consensual encounter. For instance, if a police officer stops to aid a person whose vehicle has broken down on the side of the highway and then notices an open bottle of alcohol in the car, the officer would be both acting in his community caretaking function and engaging in a consensual encounter. However, because the act of stopping to assist a stranded motorist would not have been a seizure in the first place, a court would have no need to invoke the community caretaking exception." *Luedemann*, 222 Ill. 2d at 548.

We concluded that the community caretaking doctrine "is analytically distinct from consensual encounters and is invoked to validate a search or seizure as reasonable under the fourth amendment. *It is not relevant to determining whether police conduct amounted to a seizure in the first place.*" (Emphasis added.) *Luedemann*, 222 Ill. 2d at 548.

The analytical consequence of erroneously describing the third tier of police-citizen encounters as community caretaking is manifest in the present case. In its written order granting defendant's motion to suppress evidence and quash arrest, the circuit court found as follows:

> "In determining whether a community caretaking encounter with a police officer rises to the level of a *Terry* stop, the question is whether, under the circumstances, a reasonable person would feel free to drive away from the officer. The officer testified that after pulling in behind defendant's vehicle he activated his overhead lights. This court finds that under said circumstances a reasonable person would not feel free to pull away."

In a written order denying the State's motion to reconsider, the circuit court elaborated:

> "The issue was whether or not this particular stop raised to a level beyond the motorist assist to a Terry stop in which there has to be, based upon a reasonable suspicion, that the person has or is about to commit a crime. If not then the question becomes whether or not, when the officer approached the

-8-

vehicle, a reasonable man would feel free to leave. In this situation the court made the specific finding that once the officer turned the overhead lights on a reasonable man would not feel free to go, thereby advancing it to a Terry stop and that there was not sufficient indicia to effectuate a Terry stop and therefore the court granted the Motion to Suppress."

Based on past erroneous use of the label community caretaking, the circuit court's reasoning is understandable, but is nonetheless erroneous.

The circuit court incorrectly equated the community caretaking encounter between Brunnworth and defendant with a third-tier consensual encounter, which ceased to be consensual when Brunnworth activated his emergency lights. At that point, according to the circuit court, the consensual encounter was "raised" to a second-tier *Terry* stop, for which Brunnworth admittedly had no articulable suspicion of criminal activity. However, *Luedemann* instructs that the community caretaking doctrine is analytically distinct from consensual encounters. Therefore, in the present case, either Brunnworth was engaged in a third-tier consensual encounter with defendant, in which case the community caretaking doctrine is not relevant, or Brunnworth seized defendant, in which case the community caretaking doctrine can be invoked to validate the seizure as reasonable under the fourth amendment. See *Luedemann*, 222 Ill. 2d at 548.

In the present case, the circuit court found that Brunnworth, while engaged in a community caretaking encounter, seized defendant by activating his emergency lights.[1] We need not and do not decide whether a police officer's use of emergency lights, either alone or combined with other law enforcement techniques, always constitutes a seizure within the fourth amendment. The State expressly concedes

---

[1]The circuit court also incorrectly defined the test of seizure as whether "a reasonable person would feel free to drive away from the officer," or whether "a reasonable man would feel free to leave." The correct test in this context was whether a reasonable innocent person in defendant's position would have believed he was free to decline to answer Brunnworth's question or otherwise terminate the encounter. See *Luedemann*, 222 Ill. 2d at 550-51 (collecting cases).

"that defendant was seized" when Brunnworth activated his emergency lights, "even if he did so for safety reasons." Justice Myerscough concluded that although defendant was seized, the seizure was proper under the community caretaking doctrine. 395 Ill. App. 3d at 202 (Myerscough, J., specially concurring). We agree.

The challenge of applying the community caretaking doctrine has been described as follows:

> "Most people who appear to be in distress would welcome a genuine offer of police assistance. But permitting police to search or seize whenever they might be pursuing community-caretaking goals risks undermining constitutional protections. The challenge of [the] community-caretaking doctrine is to permit helpful police to fulfill their function of assisting the public, while ensuring that searches for law-enforcement purposes satisfy the requirements of the Fourth Amendment." M. Dimino, *Police Paternalism: Community Caretaking, Assistance Searches, and Fourth Amendment Reasonableness*, 66 Wash. & Lee L. Rev. 1485, 1562-63 (2009).

In *Luedemann*, this court identified two general criteria a court must find in determining whether the community caretaker exception applies. First, law enforcement officers must be performing some function other than the investigation of a crime. See *Cady*, 413 U.S. at 441, 37 L. Ed. 2d at 714-15, 93 S. Ct. at 2528; *Luedemann*, 222 Ill. 2d at 545-46. In making this determination, a court views the officer's actions objectively. See *Whren*, 517 U.S. at 813, 135 L. Ed. 2d at 98, 116 S. Ct. at 1774 (rejecting "any argument that the constitutional reasonableness of traffic stops depends on the actual motivations of the individual officers involved"). Second, the search or seizure must be reasonable because it was undertaken to protect the safety of the general public. See *Cady*, 413 U.S. at 447, 37 L. Ed. 2d at 718, 93 S. Ct. at 2531. "Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39, 136 L. Ed. 2d 347, 354, 117 S. Ct. 417, 421 (1996). The court must balance a citizen's interest in going about his or her business free from police interference against the public's interest in having police officers perform services in addition to strictly law enforcement. See *Luedemann*, 222 Ill. 2d at 547 (and cases cited

therein).

The facts of the present case fall within the fourth amendment community-caretaker exception, rendering Brunnworth's assumed seizure of defendant reasonable. First, the record shows that defendant's seizure was unrelated to the investigation of crime. Defendant's vehicle was pulled over on the river-side shoulder of a busy four-lane highway at night. Based on these objective and specific facts, Brunnworth approached defendant's vehicle to offer any aid required under the circumstances. Further, Brunnworth activated his emergency lights because it was dark and there was, according to his testimony, a "lot of traffic."

Second, Brunnworth's assumed seizure of defendant was reasonable because it was undertaken to protect public safety. Based on the objective and specific facts of record, it was reasonable for Brunnworth to approach defendant's vehicle to offer any aid required under the circumstances. The public has a substantial interest in ensuring that police offer assistance to motorists who may be stranded on the side of a highway, especially after dark and in areas where assistance may not be close at hand. See *State v. Kramer*, 2009 WI 14, ¶42, 315 Wis. 2d 414, 759 N.W.2d 598 (vehicle parked on shoulder of road at night). In the proper performance of his or her duties, a law enforcement officer has the right to make a reasonable investigation of vehicles parked along roadways to offer such assistance as might be needed and to inquire into the physical condition of persons in vehicles. The occupant of a parked vehicle may be intoxicated, suffering from sudden illness, or may be only asleep. Under these circumstances, it is within a responsible law enforcement officer's authority to determine whether assistance is needed. See, *e.g.*, *Kozak v. Commissioner of Public Safety*, 359 N.W.2d 625, 628 (Minn. App. 1984) (vehicle parked on highway shoulder); accord *State v. Lovegren*, 2002 MT 153, ¶26, 310 Mont. 358, 51 P.3d 471 (vehicle pulled over on shoulder of road at 3 a.m. with lights off and engine running). Further, it was objectively reasonable for Brunnworth to activate his emergency lights, not only for his safety, but also for the safety of defendant and passing traffic. See, *e.g.*, *Kramer*, 2009 WI 14, ¶43, 315 Wis. 2d 414, 759 N.W.2d 598; *Luedemann*, 222 Ill. 2d at 565-66 (rejecting the position that "if an officer patrolling in the middle of the night sees something about

-11-

a vehicle that appears out of the ordinary, he must walk casually up to the side window in the dark, with no concern for his own safety and no illumination, or be held to have committed a seizure").

We hold that the objective facts of record fall within the community caretaking exception to the fourth amendment, rendering Brunnworth's assumed seizure of defendant reasonable. When defendant rolled down his window and opened his mouth to speak, Brunnworth acquired the reasonable suspicion necessary to further detain and investigate defendant. See *Luedemann*, 222 Ill. 2d at 543; *People v. Scott*, 249 Ill. App. 3d 597, 604 (1993); *People v. Kennedy*, 144 Ill. App. 3d 4, 6-7 (1986). Since there was no fourth amendment violation, the exclusionary rule, which is a remedy for a fourth amendment violation, does not apply in this case. We need not and do not discuss it. See, *e.g.*, *United States v. Ramirez*, 523 U.S. 65, 72 n.3, 140 L. Ed. 2d 191, 198 n.3, 118 S. Ct. 992, 997 n.3 (1998) (having concluded that there was no fourth amendment violation, Court need not decide exclusionary rule issue); *People v. Dancy*, 69 Ill. App. 3d 543, 546, 548 (1979) (having determined that defendant's arrest and search were lawful, exclusionary rule does not apply).

Accordingly, we uphold the judgment of the appellate court, which reversed the circuit court's suppression order and remanded to the circuit court for further proceedings. In reaching our conclusion, we are aware that our analysis differs from that of the appellate court majority, which assumed a fourth amendment violation and determined the availability of the exclusionary rule. 395 Ill. App. 3d at 199-201. However, this court is not bound by the appellate court's reasoning and may affirm for any basis presented in the record. *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 258 (2006); *In re Application of the Cook County Treasurer*, 185 Ill. 2d 428, 436 (1998).


B. Driver's License Statutory Summary Suspension

We note defendant's additional contention regarding the State's statutory summary suspension of his driver's license. On the night of defendant's arrest, Brunnworth served defendant with notice of the statutory summary suspension of his driver's license based on defendant's failure to take a Breathalyzer test. See 625 ILCS

5/11–501.1 (West 2008). In November 2008, the State suspended defendant's driver's license. Shortly after the circuit court granted his motion to suppress evidence and quash arrest, defendant filed a petition for hearing, seeking rescission of the State's statutory summary suspension of his driver's license. See 625 ILCS 5/2–118.1 (West 2008). Pursuant to the granting of defendant's motion to suppress evidence and quash arrest, the circuit court entered an order rescinding the statutory summary suspension. On appeal, the State assigned error to the circuit court's rescission order. The appellate court noted that the circuit court based its rescission order solely on its order to suppress evidence and quash arrest, which the appellate court reversed. Accordingly, the appellate court vacated the rescission order. 395 Ill. App. 3d at 201.

Before this court, defendant contends in his appellant's brief that the appellate court erred in vacating the circuit court's order rescinding his statutory summary suspension of his driver's license. However, defendant failed to include this claim in his petition for leave to appeal. Rather, defendant's petition for leave to appeal focused exclusively on the lower courts' disposition of his motion to suppress evidence and quash arrest. Indeed, a careful review of defendant's petition for leave to appeal fails to disclose even a reference to the statutory summary suspension of his driver's license. Supreme Court Rule 315(c)(3) (210 Ill. 2d R. 315(c)(3)) requires a petition for leave to appeal to contain "a statement of the points relied upon in asking the Supreme Court to review the judgment of the Appellate Court." Issues that a party fails to raise in its petition for leave to appeal, even if raised in the party's appellant's brief, are not properly before this court and are forfeited. *City of Naperville v. Watson*, 175 Ill. 2d 399, 405-06 (1997); *People v. Clark*, 119 Ill. 2d 1, 7 (1987). We decline to override the forfeiture (see *In re A.W.J.*, 197 Ill. 2d 492, 499-500 (2001)), especially in light of our remand to the circuit court, where defendant may pursue any applicable remedy.

### III. CONCLUSION

For the foregoing reasons, the judgment of the appellate court, remanding the cause to the circuit court for further proceedings, is affirmed.

*Affirmed.*