**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2020 IL App (3d) 180036-U

Order filed May 13, 2020

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 9th Judicial Circuit, Knox County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0036 Circuit No. 17-CF-12 |
| MELISSA ANDERSON, | ) ) ) | Honorable Scott S. Shipplett, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE WRIGHT delivered the judgment of the court.
Presiding Justice Lytton and Justice Carter concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  Officers' search of defendant's bathroom was outside the scope of community caretaking.

¶ 2    Defendant, Melissa Anderson, was convicted of unlawful possession of drug paraphernalia (720 ILCS 600/3.5 (West 2016)) and unlawful possession of a controlled substance (720 ILCS 570/402 (West 2016)). She appeals the circuit court's denial of her motion to suppress evidence seized from the warrantless search of her bathroom. We reverse.

## I. BACKGROUND

At the hearing on defendant's motion to suppress, police officers testified that they were flagged down by a person identifying himself as defendant's boyfriend, Robert Orris, at approximately 12:06 a.m. on January 7, 2017. Orris indicated that defendant had not responded to his telephone calls or text messages. In an attempt to locate defendant, the officers went to her apartment and repeatedly knocked on the door but defendant did not respond. Next, the officers spoke to Orris again and also spoke to two of defendant's friends, Sherry Wallick and Stephanie Wertz. Wallick told the officers that she saw defendant on the evening of January 6, 2017. Wallick noted that defendant was a "very deep sleeper." Wertz told the officers that recently defendant had been depressed, distant, and withdrawn.

Following this conversation, the officers returned to defendant's apartment door. The officers knocked on the door and called defendant's cell phone. Again, defendant did not respond. The officers received permission from their sergeant to use the master key for the building to enter defendant's apartment to check her well-being. The officers unlocked the door and announced, "Abingdon Police Department." Defendant responded and indicated that she was in the bathroom taking a bath. The officers asked defendant to exit the bathroom several times for purposes of checking on her well-being. Defendant refused. The officers explained that if defendant would open the bathroom door, the officers would enter the bathroom. Defendant refused. Thereafter, the officers entered the bathroom.

Upon entry, the officers found defendant standing in the bathroom fully clothed. The officers informed defendant that emergency medical services (EMS) were on their way to evaluate her. Defendant became agitated and told the officers to leave. The officers observed that defendant did not appear to be harmed or was not about to harm herself.

¶ 7        The officers placed defendant in handcuffs. Defendant testified she did not give the officers consent to search her apartment or the bathroom.

¶ 8        According to the officers, it was necessary to enter the bathroom in order to locate anything that defendant could use to harm herself. While inside the bathroom, without opening any drawers or cabinets, an officer observed glass tubes, steel wool in a bowl, and a white rock substance. The substance tested positive for crack cocaine.

¶ 9        The court denied defendant's motion to suppress. Defendant was subsequently found guilty and sentenced to 50 days in jail and two years of conditional discharge.

¶ 10        II. ANALYSIS

¶ 11        Defendant asserts that the circuit court erred by denying her motion to suppress evidence on two grounds. First, defendant argues the officers lacked the authority to enter her apartment. Second, defendant claims that the officers improperly seized her person. Third, defendant asserts that once inside the apartment, the officers lacked the authority to search her bathroom. We begin with the third issue as it is outcome determinative.

¶ 12        A warrantless search or entry is impermissible unless it fits within a well-established exception to the warrant requirement. *Mincey v. Arizona*, 437 U.S. 385, 390 (1978). A recognized exception to the warrant requirement is the community caretaking or public safety exception. *Cady v. Dombrowski*, 413 U.S. 433, 440-41 (1973). In order for a warrantless entry to qualify for this exception, two considerations must be present. The case law provides that "First, law enforcement officers must be performing some function other than the investigation of a crime. *** Second, the search or seizure must be reasonable because it was undertaken to protect the safety of the general public. [Citation.] 'Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances.' " *People v. McDonough*, 239 Ill. 2d 260,

272 (2010) (quoting *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)). However, once an officer accomplishes the community caretaking objective, the officer must have justification for any additional intrusion on fourth amendment rights. *People v. Mikrut*, 371 Ill. App. 3d 1148, 1153 (2007).

¶ 13     In this case, the first criteria regarding the community caretaking purpose for entering the apartment was clearly satisfied. See *McDonough*, 239 Ill. 2d at 272. However, once the officers secured defendant and relocated her to another room, it then becomes a much closer call to determine whether the same community caretaking purpose also justified the officers' decision to enter the bathroom without defendant's consent.

¶ 14     The State argues general safety considerations created a duty for the officers to quickly eliminate any public safety concerns attributable to items defendant might use for purposes of self-harm or suicide. However, prior to their entry into the bathroom, the officers visually verified defendant did not appear to be suffering a health emergency and did not appear to have any physical signs of self-harm.

¶ 15     The officers spoke to persons close to defendant before entering the apartment with the master key. However, based on these conversations, the officers did not have a reason to conclude defendant was suicidal or prone to seriously harming herself.

¶ 16     Therefore, while we conclude the trial court correctly found the community caretaking exception justified the warrantless entry into the apartment, the totality of the circumstances did not provide the officers with an objectively reasonable basis for a warrantless search of the bathroom, without defendant's permission.

¶ 17                              III. CONCLUSION

¶ 18     The judgment of the circuit court of Knox County is reversed.

¶ 19        Reversed.