2020 IL App (2d) 190867-U
No. 2-19-0867
Order filed December 3, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 18-CF-426 |
| KENNETH V. REYNOLDS, | ) ) | Honorable James K. Booras, |
| Defendant-Appellee. | ) | Judge, Presiding. |

JUSTICE BRENNAN delivered the judgment of the court.
Justices McLaren and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:    Officer's stop of defendant's vehicle in a grocery store parking lot was objectively justified based upon the absence of a front registration plate notwithstanding that the officer stopped the vehicle to investigate a different offense; therefore, the trial court erred in suppressing contraband found during a subsequent consensual search of the vehicle.

¶ 2    Defendant, Kenneth V. Reynolds, was indicted on two counts of unlawful possession of a

controlled substance (720 ILCS 570/402(c) (West 2018)). Defendant filed a "Motion to Quash

Arrest and Suppress Evidence,"[1] arguing that the police lacked reasonable, articulable suspicion to detain and search him and that all evidence gathered thereafter should be suppressed. Following a hearing, the trial court granted defendant's motion and later denied the State's subsequent motion for reconsideration. The State filed a certificate of impairment and a timely notice of appeal. For the reasons that follow, we reverse and remand.

¶ 3                                    I. BACKGROUND

¶ 4      The following testimony was presented at the hearing on defendant's motion. Village of Antioch police officer Chad McCameron testified that, at 11:48 p.m. on February 24, 2018, he was at Jewel-Osco, located near Illinois Routes 59 and 173 in Antioch, when he saw a red Chevrolet Impala parked facing south in the "fire lane or parcel pickup lane" of Jewel. The vehicle's hood was up and there was a man looking under the hood. McCameron approached the vehicle from the south and spoke to the man. The man gave McCameron his name, but he was referenced in the testimony as simply "Mr. Moberg" or "Moberg." Moberg closed the hood and told McCameron that there was an issue with the power steering pump. Moberg then relocated the vehicle to a parking space. McCameron noticed that there was no front license plate on the vehicle. He did, however, see an "in-transit license plate" affixed to the rear of the car. He ran the plate and learned that it was registered to "American Auto Expo," which was located in Lake Villa. Although there was nothing improper about the in-transit license plate itself, McCameron knew from prior police

_____

[1] As the State notes, although defendant titled his filing as a "Motion to Quash Arrest and Suppress Evidence," it should be referred to as a "Motion to Suppress Evidence," due to the statutory provision from which the motion derives (see 725 ILCS 5/114-2 (West 2018)) and the reasons provided in *People v. Winchester*, 2016 IL App (4th) 140781, ¶¶ 21-30.

contact that the plate "had been misused under the in-transit status belonging to [defendant] and American Auto Expo."

¶ 5     McCameron moved his squad car and positioned it behind the Impala. He had a conversation with Moberg. McCameron was shown pictures of his squad car behind the Impala and agreed that the Impala "could not have backed out of that space" because there was another vehicle in front of it. McCameron agreed that, if Moberg had tried to leave at that point, McCameron would have stopped him.

¶ 6     After his conversation with Moberg, McCameron saw defendant in Jewel. Defendant exited Jewel carrying "some bags of groceries." As defendant walked toward the Impala, McCameron saw a bulge in defendant's right front pocket and inquired about it. Defendant told him that it was his wallet. With defendant's permission, McCameron placed his hand in defendant's pocket and removed two wallets. McCameron agreed that defendant was not free to leave while being questioned. Defendant told McCameron that he was on his way to his house, which was about a mile away. Moberg had provided the same information.

¶ 7     McCameron testified that he was "under the suspicion that [defendant] was misusing his in-transit plates." He testified that in-transit plates are not to be used for "personal errands" but are "only supposed to be affixed to a vehicle during the transport and sale of said vehicle." He testified that defendant had previously been ticketed in 2012 for misuse of in-transit plates. He agreed that, aside from possible misuse of the in-transit plates, he had not seen defendant violate any laws that night. Ultimately, another police officer arrived in a second squad car.

¶ 8     On cross-examination, McCameron reaffirmed that his actions on the night in question were part of an investigation into the potential misuse of the in-transit plate he saw in the Impala. He testified that he was aware of the following information as he conducted his investigation: a

suspect in some thefts in the area had worn American Auto Expo apparel during the thefts; current and past employees of defendant had claimed that he was moving stolen property as well as supplying illegal pills to his employees; and defendant had been in prison for narcotics-related offenses.

¶ 9    McCameron testified further on cross that he did not ask Moberg for his name when he first approached the Impala in the fire lane. McCameron asked Moberg to move the Impala, and when Moberg did so, McCameron noticed that the car was missing a front license plate. McCameron testified that a front license plate was required in Illinois. When McCameron saw the in-transit plate, he ran the plate. When asked what had "stoked [his] interest" at that point, he responded: "In-transit and also the time of the day. I understand the use of in-transit plates to be very defined." McCameron testified that there are limited uses for in-transit plates and that they are mostly used for moving vehicles during a sales transaction.

¶ 10    After Moberg moved the Impala, McCameron told him that he was investigating the misuse of the in-transit plates on the Impala. McCameron also ran Moberg's name and learned that he had a suspended driver's license. At that point, McCameron did not know if Moberg had driven the vehicle to Jewel by himself or if he was with anyone else. Moberg told him that defendant had purchased the vehicle two days earlier and that they were heading to defendant's house. McCameron testified that American Auto Expo was located about 3.5 miles from Jewel and that it was almost midnight. There were no automobile lots adjacent to Jewel.

¶ 11    McCameron testified that while he was speaking with Moberg, he saw defendant in Jewel. When defendant exited Jewel and approached him, McCameron first asked defendant about the bulge in his pocket. After McCameron confirmed that the bulge was two wallets, he told defendant

that he was conducting an investigation and asked him for consent to search his vehicle. Defendant gave him consent to search the vehicle. During the search, McCameron found contraband.

¶ 12    Following McCameron's testimony, defense counsel argued that McCameron detained defendant without having seen any evidence of criminality. Counsel asserted that because the detention was illegal, nothing found thereafter was admissible as evidence. The State responded that McCameron essentially conducted a traffic stop of the vehicle and was properly investigating the possible misuse of the in-transit plates. The State further asserted that defendant voluntarily walked up on the scene and voluntarily consented to the search.

¶ 13    The trial court granted the motion to suppress:

"I would have agreed with the State minus a couple things. First of all, I must comment on the officer's alertness and good investigating and activities that night in protecting the community, and also, I must comment on the honesty and straightforwardness and the testimony he gave. Even though it at points was damning to his case, he gave it right out.

Now, I'm not saying—and I didn't say that before—that the defendant is a reputable citizen in Antioch. However, he doesn't have a prior criminal record or he has not been a gadfly or he's not committing crimes. The question is, was he committing a crime at this time when the defendant came out? And I'll concentrate on that, as I said, first.

When he came out of the Jewel with bags in his hands, his car was blocked. He couldn't move backwards. He could have maneuvered, I don't know, but somebody with a squad car behind with the lights on, I don't think they would have attempted it. But still, he was not free to leave, and the officer agrees with that.

He could have backed up and gone home with his groceries. That's what the officer should have allowed him to do. At that point there was no criminal activity that was afoot. There was no articulable facts to arise [*sic*] a reasonable suspicion that a crime is now happening or it is afoot, as [*Terry v. Ohio*, 392 U.S. 1, 27 (1968)] indicates. There's why there is a requirement for probable cause. That's why there is a requirement for a search warrant, but even then, to get a search warrant you need probable cause.

Mere suspicion that the plate may have been misused—and I agree with the officer, it probably was, because, you know frankly, I think everything that the officer said is true about the defendant. However, as I said, even the worst criminals are entitled to the 4th and 14th Amendment protections, and there has to be a reasonable suspicion based upon articulable facts that a crime is afoot.

Even the detention of the defendant himself, even the detention regarding searching his pocket, that is—citizens are allowed to do whatever they want, if they want two wallets in their pockets; but you know, if they are in a situation where they present a dangerous situation, then the officer may do that to protect his safety. There was no reason to suspect something like that was happening here today.

And since the defendant was not violating any laws and there was—the officer could have investigated and let him go, but once there was a seizure of the defendant's person, that's where things got—are not allowed by the 4th Amendment. Therefore, I am going to reluctantly grant defendant's motion to suppress."

¶ 14    The State filed a motion for reconsideration, which the trial court denied. The State filed a certificate of impairment and a timely notice of appeal.

¶ 15                                  II. ANALYSIS

¶ 16    On appeal, the State concedes that McCameron's action in parking his squad car behind the Impala constituted a seizure of the vehicle but argues  that McCameron had reasonable, articulable suspicion to support a temporary seizure of the Impala, where the vehicle was initially seen parked in the fire lane, the vehicle did not have a front registration plate, and McCameron had cause to believe that the vehicle was not being used within the allowable uses of an in-transit license plate. Defendant argues that the trial court properly granted his suppression motion because McCameron  "lacked the requisite reasonable, articulable suspicion to justify [the seizure]." We note that defendant makes no argument concerning the validity of his subsequent consent to search the vehicle other than that "an improper detention destroys the admissibility of an [*sic*] evidence gathered after what might otherwise be a valid consent to search." Thus, the sole issue on appeal is whether McCameron's seizure of the vehicle was a fourth amendment violation.

¶ 17    "When a defendant files a motion to suppress evidence, he bears the burden of proof at a hearing on that motion." *People v. Brooks*, 2017 IL 121413, ¶ 22. In reviewing a trial court's ruling on a suppression motion, we apply a two-part standard of review. *People v. McDonough*, 239 Ill. 2d 260, 265-66 (2010). We will reverse a trial court's factual findings only if they are against the manifest weight of the evidence. *Id.* at 266. "This deferential standard is grounded in the reality that the circuit court is in a superior position to determine and weigh the credibility of the witnesses, observe the witnesses' demeanor, and resolve conflicts in their testimony." *Id.* We review *de novo* the trial court's "ultimate legal ruling" to suppress the evidence. *Id.* Here, the court found McCameron to be a credible witness yet still granted suppression. We accept the court's findings, and thus we consider the court's ruling *de novo*. See *People v. Manzo*, 2018 IL 122761, ¶ 25 ("If the reviewing court accepts the trial court's factual findings, it conducts a *de novo* review of whether suppression was appropriate under those facts.").

¶ 18    The fourth amendment to the United States Constitution and article 1, section 6 of the Illinois Constitution protect citizens against unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970 art. I, § 6. It is generally understood that there are three tiers of police-citizen encounters that do not constitute an unreasonable seizure. See *People v. Gherna*, 203 Ill. 2d 165, 176 (2003). In *McDonough*, our supreme court observed as follows:

> "Courts have recognized three theoretical tiers of police-citizen encounters. The first tier involves an arrest of a citizen, which must be supported by probable cause. [Citations.] The second tier involves a temporary investigative seizure conducted pursuant to *Terry v. Ohio*, 392 U.S. 1 *** (1968). In a '*Terry* stop,' an officer may conduct a brief, investigatory stop of a citizen when the officer has a reasonable, articulable suspicion of criminal activity and such suspicion amounts to more than a mere 'hunch.' [Citations.] The third tier of police-citizen encounters involves those encounters that are consensual. An encounter in this tier involves no coercion or detention and, therefore, does not implicate any fourth amendment interests. [Citations.]" *McDonough*, 239 Ill. 2d at 268.

¶ 19    The State concedes here that McCameron's action in parking his squad car behind the Impala constituted a vehicle stop, which is a type of seizure generally analyzed under the principles governing *Terry* stops. *People v. Close*, 238 Ill. 2d 497, 504-05 (2010). Under *Terry*, the investigatory stop must be justified at its inception. *Id.* at 505. " '[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' " *Id.* (quoting *Terry*, 392 U.S. at 21.) "The officer's suspicion must amount to more than an inarticulate hunch [citations] but need not rise to the level of suspicion required for probable cause." *Id.* The validity of a stop must be evaluated by considering the totality of the circumstances. *People v. Timmsen*, 2016 IL 118181, ¶ 9.

¶ 20    Even if the trial court's *Terry* assessment was correct as it relates to McCameron's transit plate investigation, its decision to grant defendant's motion to suppress was otherwise error. Section 3-413 of the Illinois Vehicle Code (Code) (625 ILCS 5/3-413(a) (West 2018)) provides that "[r]egistration plates issued for a motor vehicle *** shall be attached thereto, one in the front and one in the rear." This requirement also applies to "special plates" (see *id.* § 3-601(g)), which are defined as "Illinois registration plates issued to Dealers, Manufacturers, Transporters and Repossessors" (92 Ill. Adm. Code 1010.450(a) (1990)).

¶ 21    Although Officer McCameron did not indicate that the observed front registration plate violation was his reason for stopping the vehicle, that fact does not matter. In analyzing whether a stop was proper, a court is not limited to bases cited by the officer for effectuating the stop. *Whren v. United States,* 517 U.S. 806, 813 (1996). Rather, a totality-of-the-circumstances approach is used to objectively analyze whether the stop was reasonable. *People v. Ledesma,* 206 Ill. 2d 571, 583 (2003), *overruled on other grounds by People v. Pitman,* 211 Ill. 2d 502, 513 (2004). " 'The officer's subjective motivation is irrelevant.' " *People v. Wear,* 229 Ill. 2d 545, 566 (2008) (quoting *Brigham City, Utah v. Stuart,* 547 U.S. 398, 404 (2006)). Here, McCameron had a proper basis to stop the vehicle because it was in violation of section 3-413(a) of the Code for not having a front plate. 625 ILCS 5/3-413(a) (West 2018). Thus, while McCameron's *subjective* reason for stopping the vehicle may not have been sufficient on fourth amendment grounds, the stop of the vehicle was certainly appropriate based upon the objective fact that he had observed the vehicle without the required front registration plate.

¶ 22    Based on the foregoing, we hold that the totality of the facts and circumstances known to McCameron at the time of the vehicle's seizure, specifically the missing front registration plate, provided reasonable, articulable suspicion to effectuate a stop of the vehicle.

¶ 23                                    III. CONCLUSION

¶ 24     For the reasons stated, we reverse the trial court's order granting defendant's motion to suppress.

¶ 25     Reversed.