2021 IL App (2d) 190434-U
No. 2-19-0434
Order filed March 22, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 18-CM-1657 |
| JOHN J. FORESTA, | ) ) | Honorable Brian W. Jacobs, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court.
Justices Hutchinson and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:   At defendant's bench trial for resisting police officers who were seizing him for transport to a hospital for evaluation, (1) the trial court properly relied on hearsay statements, not for the truth of the matter asserted, *i.e.*, that defendant might be suicidal, but to explain why the officers decided to transport defendant to the hospital; and (2) the evidence was sufficient to show that the officers were performing a proper community-caretaking function, and thus an authorized act, in seizing defendant for transport to the hospital.

¶ 2    Defendant, John J. Foresta, appeals from his conviction in the circuit court of Du Page County of resisting or obstructing a peace officer (720 ILCS 5/31-1 (West 2018)). He contends that the trial court improperly considered hearsay evidence and that the remaining evidence was

insufficient to prove beyond a reasonable doubt that police officers were engaged in an authorized act when defendant resisted. Because the court did not consider the hearsay evidence for an improper purpose and the evidence established that the officers were involved in a community-caretaking function when defendant resisted, we affirm.

¶ 3                                I. BACKGROUND

¶ 4     Defendant was charged by complaint with one count of resisting or obstructing a peace officer (720 ILCS 5/31-1 (West 2018)). Defendant opted for a bench trial.

¶ 5     The following facts were established at defendant's trial. On July 17, 2018, at approximately 10 p.m., Officer Marlys Gilbert of the Woodridge Police Department was in uniform and on patrol when she was dispatched via radio to a residence on Meadowdale Lane to "check on [the] well-being" of defendant. When Officer Gilberts was asked why she had been sent to check on defendant's well-being, defendant objected based on hearsay. The trial court overruled the objection, and Officer Gilbert testified that defendant's ex-girlfriend had called the police department to report that she had received a Snapchat video that caused her to think that defendant was going to kill himself. When defendant again objected to that testimony as hearsay, the court overruled the objection, explaining that it was not being offered for the truth of the matter asserted but rather to show the reason why Officer Gilbert went to the residence on Meadowdale Lane. Officer James Rion of the Woodridge Police Department testified that he received a radio dispatch regarding a "suicidal subject" at a residence on Meadowdale Lane. He responded and joined Gilbert at the residence.

¶ 6     According to Officer Gilbert, after arriving with other officers, she encountered defendant outside in front of the house. When the officers spoke to defendant, he was cooperative at times

and at other times was almost belligerent. According to Officer Rion, defendant denied being suicidal.

¶ 7    When defendant told the officers that he lived there with his elderly aunt, Officer Gilbert asked defendant if she could speak to his aunt. Defendant agreed but told the officers that, because he did not want them to go in the house, he would go inside and wake up his aunt. The officers allowed defendant to enter the house alone.

¶ 8    As the officers waited outside, Officer Gilbert yelled through the door, asking defendant's aunt if it would be easier if they came in. The officers then entered the house.

¶ 9    At one point, the officers told defendant that they had called for paramedics to come and speak with defendant. Officer Rion testified that they called for paramedics because of the information that they had gathered from the "reporting party" as well as the fact that defendant had gone into an area of the house where the "suicidal videos" allegedly were made. After the paramedics arrived, they spoke with defendant. In doing so, they "evaluated [defendant] with questions." According to Officer Gilbert, after the paramedics spoke with defendant, they called a hospital and spoke to a doctor as to whether defendant needed to go to the hospital.

¶ 10    When Officer Gilbert was asked what the paramedics told her, defendant objected based on hearsay. The trial court overruled the objection because the testimony was being offered to explain the officers' further conduct. Officer Gilbert then testified that the paramedics, after speaking with the doctor, told the officers that defendant would have to be transported to the hospital. When defendant objected again based on hearsay, the court overruled the objection and allowed the testimony to show the officers' course of conduct. When Officer Rion testified that, after calling the hospital, the paramedics told the officers that defendant had to go to the hospital, defendant yet again objected based on hearsay. The court again overruled the objection and

allowed the testimony only for the course of conduct of the officers and not for the truth of the matter asserted.

¶ 11    As the paramedics were preparing to transport defendant to the hospital, the officers told defendant that he would have to go to the hospital. Defendant responded that he was not going to the hospital and that they could not make him. For several minutes, the officers went back and forth with defendant, trying to explain to him why he needed to go to the hospital.

¶ 12    At one point, defendant said that he was going to go in the house and started to walk toward the front door. Officer Rion, who was standing between defendant and the front door, put his hand on defendant's chest. Officer Gilbert then took hold of defendant's right arm and Officer Rion took hold of defendant's left arm. As they walked defendant toward the stretcher, Officer Rion asked defendant if he was going to sit on the stretcher willingly or if he needed to be handcuffed. Defendant then clenched his left arm and bent it toward his chest. Because defendant was resisting, Officer Rion struck defendant's left leg with his knee and applied a straight-arm-bar takedown. Once defendant was on the ground, he was handcuffed and put on the stretcher. When Officer Rion told defendant that, if he had voluntarily sat on the stretcher they would not have had to take him down and handcuff him, defendant agreed and apologized. On cross-examination, Officer Rion denied striking defendant with either his hands or a club.

¶ 13    Defendant's father, Joseph Foresta, testified on defendant's behalf. At around 10 p.m., on July 17, 2018, Joseph was sitting at home watching television when he received a phone call from his daughter that the police were at defendant's house. Because he lived close by, Joseph walked to defendant's house. He stayed in the shadows a few houses away and observed the situation.

¶ 14    Joseph saw three officers removing defendant from the house. He saw the one male officer hit defendant's legs a few times with a club. Once the officers got defendant on the ground, they

put him on the gurney and into the ambulance. When Joseph approached and identified himself to the officers, they would not let him speak to defendant. He was told that defendant was being taken to the hospital to be evaluated as a suicide risk. Joseph went to the hospital and, after waiting two hours, took defendant home. Joseph denied that defendant was ever suicidal.

¶ 15 In finding defendant guilty, the trial court found that, because they wore uniforms, defendant knew the officers were peace officers. In assessing whether the evidence was sufficient to prove that the officers were engaged in an authorized act, the court noted that it did not "find much of [the evidence] relevant to *** whether or not the defendant was actually suicidal or not." The court added that whether defendant was actually suicidal was "not important to this Court." The court further noted that, when an officer receives information that someone is suicidal, it would "certainly fall within the community caretaking function of an officer." The court explained that it is not for an officer to decide whether someone is actually suicidal. Rather, when an officer is notified that a person might be suicidal, his "official capacity is to transport the [person] to the hospital." The court further found that the officers were not acting for the purpose of investigating a crime.

¶ 16 Defendant moved to reconsider, contending that once defendant said that he was not suicidal and tried to enter his home, the officers were no longer engaged in community caretaking. Defendant further claimed that the trial court improperly considered—as proof that the defendant was actually suicidal—the hearsay evidence regarding what the officers were told by defendant's ex-girlfriend and the paramedics.

¶ 17 The trial court rejected defendant's contentions and denied the motion to reconsider. The court sentenced defendant to six months' court supervision, and defendant filed this timely appeal.

¶ 18                                    II. ANALYSIS

¶ 19    On appeal, defendant contends: (1) the trial court improperly considered the hearsay statements by defendant's ex-girlfriend and the paramedics for the truth of the matter asserted; and (2) the State did not prove beyond a reasonable doubt that the officers were engaged in an authorized act when they seized him and forced him to go to the hospital.[1]

¶ 20    When a defendant challenges on appeal the sufficiency of the evidence, we ask whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011). When a defendant is charged with resisting or obstructing a peace officer, the State is required to prove, among other things, that he knowingly obstructed a police officer while engaged in an "authorized act within his or her official capacity." 720 ILCS 5/31-1(a) (West 2018). Thus, if the officers were not engaged in an authorized act when the defendant resisted, his conviction must be reversed. *People v. Slaymaker*, 2015 IL App (2d) 130528, ¶ 12.

¶ 21    We will first address whether the trial court relied improperly on hearsay evidence in finding that the officers were engaged in an authorized act. It did not.

¶ 22    "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Illinois Rule of Evidence 801(c) (eff. Oct. 15, 2015). However, out-of-court statements are not inadmissible hearsay if offered for the limited purpose of showing the course of conduct of the police to fully explain the

---

[1] Although defendant asserts, in part, that the officers were not authorized to seize him under section 3-606 of the Mental Health and Developmental Disabilities Code (405 ILCS 5/3-606 (West 2018)), the State responds that it does not contend that the officers' actions were authorized by that provision. Thus, we do not decide that issue.

State's case to the trier of fact. *Jura*, 352 Ill. App. 3d at 1085; see also *People v. Rush*, 401 Ill. App. 3d 1, 15 (2010) (a statement is admissible if offered for the limited purpose of explaining why the police acted as they did). Admissibility of evidence is within the discretion of the trial court, and its ruling will not be reversed absent an abuse of discretion. *Jura*, 352 Ill. App. 3d at 1085. In a bench trial, it is presumed that the trial court considered only competent evidence. *People v. Naylor*, 229 Ill. 2d 584, 603 (2008). That presumption is overcome, however, where the record affirmatively shows that the trial court considered improper evidence. *Naylor*, 229 Ill. 2d at 603-04.

¶ 23    Defendant does not dispute that the trial court properly admitted the hearsay statements of defendant's ex-girlfriend and the paramedics for the limited purpose of showing why the officers acted as they did. Rather, defendant asserts that the trial court improperly relied on those statements for the truth of the matter asserted: that defendant was actually suicidal. We disagree.

¶ 24    In allowing the officers to testify to the out-of-court statements, the trial court expressly ruled that it was doing so for the limited purpose of showing their course of conduct. We thus presume that the court considered them only for that limited purpose. The record does not affirmatively show otherwise. Indeed, in finding defendant guilty, the court noted that little of the evidence was relevant to whether defendant was actually suicidal, and, more importantly, the court considered it unimportant whether defendant was in fact suicidal. The court explained that it is not for an officer to decide whether a person is actually suicidal; rather, when an officer has information that a person might be suicidal, the officer is authorized to transport that person to a hospital. In our view, those comments clearly show that the court did not consider the out-of-court statements for the truth of the matter asserted. Rather, the court relied on those statements solely for assessing whether the officers had reason to believe that defendant might be suicidal and thus

2021 IL App (2d) 190434-U

were authorized to act accordingly. Thus, the court did not rely on the hearsay evidence for an improper purpose.

¶ 25    We next address whether the evidence, including the out-of-court statements, was sufficient to prove defendant guilty beyond a reasonable doubt. It was.

¶ 26    Defendant's specific challenge is that the State failed to prove that the officers had the authorization to seize defendant. The State asserts that the officers' conduct in seizing defendant and forcing him to go to the hospital was authorized as a community-caretaking function. We agree.

¶ 27    In *People v. McDonough*, our supreme court explained that community caretaking refers to a function of the police in which they perform some task unrelated to the investigation of crime, such as assisting the public. *People v. McDonough*, 239 Ill. 2d 260, 269 (2006). For the doctrine to apply, two considerations must be present. *McDonough*, 239 Ill. 2d at 272. First, the officer's actions, viewed objectively, must involve some function other than investigating a crime. *McDonough*, 239 Ill. 2d at 272. Second, a search or seizure resulting from such actions must be objectively reasonable in light of the public-safety function engaged in by the officer. *McDonough*, 239 Ill. 2d at 272. In determining whether a search or seizure was justified pursuant to the community-caretaking doctrine, a court must balance a citizen's interest in going about his business free from police interference against the public's interest in having police officers perform services in addition to strictly law enforcement. *McDonough*, 239 Ill. 2d at 272.

¶ 28    Here, the officers' actions clearly fell within the ambit of the community-caretaking doctrine. First, the officers were not involved in investigating a crime. Indeed, they were performing a public-safety function. The officers were aware of a report by defendant's ex-girlfriend that he might be suicidal. After encountering defendant at his home, the officers called

for paramedics to obtain an on-scene evaluation of whether defendant might be a threat to himself. After questioning defendant, the paramedics spoke to a doctor at the hospital about defendant's condition. After speaking with the doctor, the paramedics advised the officers that defendant needed to go to the hospital for further evaluation. The totality of this information gave the officers reason to believe that defendant might be suicidal and that he needed further medical attention. Although defendant denied being suicidal, it was reasonable for the officers to discount his self-serving denial and rely on the third-party information, particularly that provided by the paramedics. Clearly, the officers were performing a public-safety function in attempting to get defendant to go to the hospital for further evaluation.

¶ 29   Second, the seizure of defendant was reasonable in light of the immediate need to prevent defendant from harming himself. Once defendant refused to cooperate with the paramedics and attempted to go into the house, the officers acted reasonably in stopping him and forcing him onto the stretcher. The force used in restraining defendant was applied only after attempting to persuade him to comply voluntarily. Moreover, the force used was only that necessary to overcome defendant's physical resistance and get him onto the stretcher and into the ambulance. When we balance the need for the police to restrain defendant so that he could be transported to the hospital for further evaluation against defendant's right to go about his business, we find the officers' actions were reasonable and, thus, authorized by the community-caretaking doctrine. Therefore, the State proved beyond a reasonable doubt that defendant resisted or obstructed the officers while they were engaged in an authorized act.

¶ 30   Although defendant relies on *Slaymaker*, 2015 IL App (2d) 130528, that reliance is misplaced. In that case, this court held that, although the defendant was originally seized properly under the community-caretaking doctrine, the subsequent pat-down of his person was not so

justified. *Slaymaker*, 2015 IL App (2d) 130528, ¶¶ 17-22. In this case, unlike *Slaymaker*, the officers took no action beyond that justified by the need to transport defendant to the hospital for further evaluation as a suicide risk. Thus, *Slaymaker* does not support defendant's position.

¶ 31                              III. CONCLUSION

¶ 32     For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 33     Affirmed.