NOTICE

Decision filed 03/19/21. The text of this decision may be changed or corrected prior to the filing of a Petiion for Rehearing or the disposition of the same.

2021 IL App (5th) 190127

NO. 5-19-0127

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 17-CF-340 |
| | ) | |
| KATHERINE O'MALLEY, | ) | Honorable |
| | ) | Zina R. Cruse, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE BOIE delivered the judgment of the court, with opinion.
Justices Welch and Moore concurred in the judgment and opinion.

**OPINION**

¶ 1 On March 21, 2017, the defendant, Katherine O'Malley, was charged by information with committing the offense of unlawful possession of a controlled substance in violation of section 402(c) of the Illinois Controlled Substances Act (Act) (720 ILCS 570/402(c) (West 2016)). On January 23, 2019, the defendant filed a motion to dismiss, stating that her alleged actions comported with the statutory immunity provided in section 414(b) of the Act (*id.* § 414(b)), which grants limited immunity from prosecution for a person seeking medical assistance for someone experiencing an overdose. The trial court conducted a hearing on the defendant's motion to dismiss

1

on February 25, 2019,[1] and on March 6, 2019, entered a written order stating its findings and granting the defendant's motion to dismiss.

¶ 2 The State now appeals the trial court's judgment granting the defendant's motion to dismiss, arguing that the defendant failed to prove that she was entitled to the limited immunity provided by section 414(b). We agree and for the following reasons, we reverse the judgment of the trial court.

¶ 3                                    I. BACKGROUND

¶ 4 The record of proceeding on the trial court's hearing on the defendant's motion to dismiss conducted on February 25, 2019, reveals the following information. At the beginning of the hearing, the parties requested that the trial court determine which party carried the burden of proof. The defendant argued that section 414(b) was a limited bar to charging or prosecuting an individual that was seeking medical assistance for an overdosing individual. As such, the defendant argued that the State should have the burden to prove it was entitled to charge the defendant in this matter. The defendant also argued that if the burden was placed on a defendant, a defendant would be required to waive his or her fifth amendment rights in order to obtain the protections of section 414(b).

¶ 5 The State argued that the defendant's motion to dismiss asserted an affirmative matter. The State, therefore, noted that a motion based upon an affirmative matter requires the individual asserting the affirmative defense to bear the burden of proof. It was the State's position that requiring a defendant to bear the burden of proof would not force a driver of a vehicle to waive

---

[1]On February 6, 2019, the defendant filed a motion to suppress, alleging that law enforcement improperly stopped defendant's vehicle without probable cause, which was also argued at the trial court's hearing on February 25, 2019. The trial court's written order of March 6, 2019, did not specifically address the defendant's motion to suppress but did make the factual finding that the actions of the law enforcement officers were proper and legal. The defendant's motion to suppress is not an issue in this appeal.

their fifth amendment rights on a law enforcement stop if they were truly assisting someone who was overdosing. The State further argued that section 414(b) gives the state's attorney the discretion as to whether to proceed with charges or prosecution if the facts fall under the requirements of the statute.

¶ 6    The trial court, after hearing arguments, ruled that the defendant carried the burden of proof. The parties proceeded to inform the trial court that they had an agreed stipulation that the specific drug and the amount of the drug involved in this matter fell within section 414(d) of the Act's limitations. See *id.* § 414(d). The defendant then presented one witness after which the State presented three witnesses. The trial court heard the following testimonies.

¶ 7    The only witness called by the defendant was Kurt Eversman, a former law enforcement officer with St. Clair County Sheriff's Department. Officer Eversman testified that, on March 19, 2017, he was employed by the St. Clair County Sheriff's Department as a law enforcement officer and that, while driving on Highway 15, he received a call from his dispatch concerning a drug overdose at a home located on North Belt West in Belleville, Illinois. Before he could proceed to the home, Officer Eversman stated that the dispatch call was changed to an individual potentially overdosing in a vehicle headed west on North Belt West. Officer Eversman testified that the vehicle proceeded to Highway 15 and that he, along with Officer Savage, conducted the stop of the vehicle.

¶ 8    Officer Eversman stated that he observed Officer Savage at the driver's side window of the stopped vehicle so Officer Eversman exited his vehicle and went to the passenger's side window. Once at the vehicle, Officer Eversman stated that he observed the defendant in the driver's seat, an individual in the passenger's seat, and three other individuals in the back seat of the vehicle. Officer Eversman testified that he also observed heroin on the passenger's seat, the driver's seat,

3

the driver's side floorboard, and the back-seat floorboard. There were also hypodermic needles on the passenger's side floorboard and the back-seat floorboard. Officer Eversman testified that once the defendant was removed from the vehicle, he observed three pills on the driver's seat and one pill on the driver's side floorboard.

¶ 9     According to Officer Eversman's testimony, he noticed that one of the individuals in the back seat appeared "kind of slumped over" and "responsive but not responsive." He also noticed that the individual in the passenger's seat was "still having some effects of the heroin or fentanyl or whatever it was they took" so the officers called for an ambulance so that emergency medical treatment could be administered. Officer Eversman acknowledged that the stop of the vehicle was for the sole purpose of checking on the well-being of the individuals in the vehicle and that he was not attempting to investigate any sort of criminal activity at the time of the stop.

¶ 10     Officer Eversman also testified that he spoke with all the individuals in the vehicle and he could not recall anyone stating that they were on the way to seek medical assistance. Officer Eversman stated that he was familiar with the area and that Memorial Hospital was 1.6 miles from the residence that the vehicle left, but that the defendant's vehicle was going the opposite direction. Officer Eversman further testified that he did not know whether Touchette Regional Hospital had a detox program, but that St. Elizabeth's Hospital would have also been closer than Touchette Regional Hospital, and that both Memorial and St. Elizabeth Hospitals dealt with drug overdoses every day.

¶ 11     The defendant informed the trial court that she had no further witnesses. The State then called Officer Savage to testify. Officer Savage stated that he was employed by the St. Clair Country Sheriff's Department and had been for 14 years. Officer Savage testified that he was on duty on March 19, 2017, and that he had received a call from his dispatch concerning a vehicle

4

with a suspected overdosed victim inside that had recently left a residence. According to Officer Savage's testimony, "we received information that they had grabbed the overdosed victim and put her in the vehicle and they left the residence and we was trying to locate the vehicle." Officer Savage stated that he located the vehicle on Highway 15 and stopped the vehicle for the sole purpose of checking on the well-being of the overdosed victim.

¶ 12    Officer Savage stated that the defendant was driving and that there were four other individuals in the vehicle. Once the vehicle was stopped, Officer Savage testified that he observed narcotics and contraband in plain sight throughout the vehicle. Officer Savage further testified that he spoke with the defendant but did not recall her making any mention of seeking medical assistance or attempting to get to a hospital. According to Officer Savage, the vehicle was heading west on Highway 15 when it was stopped and, although Memorial Hospital was close by, the vehicle was headed in the opposite direction. Officer Savage did acknowledge that medical personnel were called to the location of the stopped vehicle, but he stated that they were called by law enforcement and not at the request of any of the individuals in the vehicle.

¶ 13    Next, the State called Kevin Kocurek to testify. Kocurek testified that he was employed as an investigator with the St. Clair County Sheriff's Department and that he worked with the Drug Tactical Unit. Kocurek stated that he conducted a recorded interview with the defendant on March 20, 2017. According to Kocurek's testimony, the defendant stated during the interview that she had no idea where they were going but that the individuals in the vehicle wanted her to head toward the highway. Kocurek further testified that the defendant never mentioned seeking medical assistance or heading toward a hospital.

¶ 14    Upon cross-examination, Kocurek acknowledged that if someone was going from North Belt West to Touchette Regional Hospital, they would likely get on Highway 15 to do so. The

State then moved to admit the video, and the trial court admitted the video of the defendant's recorded interview into evidence. The defense then asked Kocurek whether he noted in the video that defendant's eyes were dilated, and Kocurek stated that he had recently viewed the video but could not remember saying anything about the defendant's eyes being dilated. The defense had no further questions of the witness.

¶ 15    Finally, the State called Nancy Reifschneider. Reifschneider testified that on March 19, 2017, the defendant and several other individuals were at a home located on North Belt West in Belleville, Illinois. Reifschneider testified that she is the owner of the home and that her niece rented the property. Reifschneider testified that she arrived at the home to check on her niece and that an individual met her at the door and informed her that her niece was "out of it." The niece then came to the door, and Reifschneider observed that her niece's speech was very slurred and that she was unsteady on her feet. Reifschneider testified that she informed her niece that she was going to call an ambulance because it appeared that the niece was overdosing on drugs. Although her niece stated that she was fine, Reifschneider told her niece that she was still going to call for an ambulance.

¶ 16    Reifschneider stated that she called 9-1-1 and while she was speaking with the dispatcher on the telephone, her niece, the defendant, and at least two other individuals left the home and entered a vehicle. Reifschneider testified that all the individuals were able to get to the vehicle on their own without any assistance and that she believed that the defendant was driving. Reifschneider stated that she advised the 9-1-1 dispatcher that the individuals were "fleeing." According to Reifschneider's testimony, none of the individuals that were leaving the residence informed her where they were going and she did not hear anyone mention seeking medical treatment, but they appeared to be in a rush and were running to the car. The vehicle then backed

6

into the grass to get around Reifschneider's vehicle and drove away from the home and headed west on North Belt West toward Highway 15. Reifschneider testified that an ambulance did arrive at the residence, but that the defendant, her niece, and the other individuals had already left.

¶ 17    The defendant did not testify, and no other witnesses were presented by either party at the hearing. The only other evidence admitted at the hearing was a map of the area in which Touchette Regional Hospital was labeled and Officer Eversman had marked the location where the vehicle had been stopped.

¶ 18    On March 6, 2019, the trial court issued a written order granting the defendant's motion to dismiss. The trial court's written order included the following factual findings:

"1. The Defendant was driving a vehicle with several passengers when she was pulled over by law enforcement and the charge in this case (Unlawful Possession of Controlled Substance) stems from this stop.

2. According to the two officers who pulled her over, they were doing a well[ness] check based on a dispatch that someone in the vehicle was suffering from a drug overdose.

3. While one officer noticed seat belt violations, illegal substances and paraphernalia after the stop, both officers testified that they did not observe a traffic violation or other offense as a basis for the stop.

4. Both officers testified that the direction of travel was toward one of the local hospitals.

5. The actions of the officers were proper and legal.

6. The Defendant has the burden of proving that *** she is entitled to limited immunity under 720 ILCS 570/414.

7

7. The Defendant was driving in the direction of Touchette Hospital which is known for its drug detox program and she was seeking medical attention for the passenger suffering from an overdose.

8. The Defendant has limited immunity against this charge."

¶ 19 The State appeals the trial court's judgment granting the defendant's motion to dismiss, arguing that the defendant failed to prove that she was entitled to limited immunity when there was no evidence demonstrating that she was seeking or obtaining medical assistance for someone experiencing an overdose.

¶ 20                                    II. ANALYSIS

¶ 21 The sole issue on appeal is whether the trial court erred in granting the defendant's motion to dismiss based on the limited immunity provided in section 414(b). The State argues that the defendant failed to prove she was a person seeking medical assistance for an overdose victim and that the evidence presented at the hearing supported the opposite conclusion. Therefore, it is the State's position that the defendant failed to prove that she was a person entitled to the limited immunity provided in section 414(b) and that the trial court's judgment granting the defendant's motion to dismiss should be reversed.

¶ 22 The defendant argues that the trial court's judgment granting the defendant's motion dismiss should be affirmed because the suspected drug evidence was found as a result of emergency medical assistance being obtained for an individual who was experiencing a drug overdose. The defendant further argues that the statutory immunity of section 414(b) was triggered as soon as Reifschneider contacted 9-1-1 and there was no reasonable or probable cause to detain, arrest, or search the defendant's vehicle for any purpose other than to provide emergency medical assistance. Because the evidence established that the vehicle was headed toward a hospital and

was stopped solely for a well-being check, it is the defendant's position that the illicit items were discovered while medical assistance was in progress and, as such, the defendant is entitled to the limited immunity provided by section 414(b).

¶ 23     The interpretation of a statute presents a question of law, subject to *de novo* review. *People v. Woods*, 193 Ill. 2d 483, 487 (2000). Under a *de novo* standard of review, this court does not defer to the lower's court judgment or reasoning but performs the same analysis that the lower court would perform. *Arthur v. Catour*, 216 Ill. 2d 72, 77-78 (2005). For questions of fact in reviewing a lower court's judgment, great deference is given to the trial court's factual findings, and this court applies a manifest weight of the evidence standard of review. *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001). "A factual finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the determination is arbitrary, unreasonable, and not based on the evidence." *In re G.W.*, 357 Ill. App. 3d 1058, 1059 (2005).

¶ 24     Section 414 of the Act provides that:

"(b) A person who, in good faith, seeks or obtains emergency medical assistance for someone experiencing an overdose shall not be charged or prosecuted for Class 4 felony possession of a controlled, counterfeit, or look-alike substance or a controlled substance analog if evidence of the Class 4 felony possession charge was acquired as a result of the person seeking or obtaining emergency medical assistance and providing the amount of substance recovered is within the amount identified in subsection (d) of this Section.

* * *

(e) The limited immunity described in subsections (b) and (c) of this Section shall not be extended if law enforcement has reasonable suspicion or probable cause to detain, arrest, or search the person described in subsection (b) or (c) of this Section for criminal

activity and the reasonable suspicion or probable cause is based on information obtained prior to or independent of the individual described in subsection (b) or (c) taking action to seek or obtain emergency medical assistance and not obtained as a direct result of the action of seeking or obtaining emergency medical assistance." 720 ILCS 570/414(b), (e) (West 2016).

¶ 25 At the hearing, the parties stipulated that the substance, and the amount of the substance, that the defendant was charged with possessing fell within the perimeters identified in subsection 414(d) of the Act. Further, the State conceded at the hearing that law enforcement did not have any reasonable suspicion or probable cause to have detained, arrested, or search the defendant for criminal activity at the time the defendant's vehicle was stopped. Therefore, the question of fact before the trial court concerning section 414(b) was whether the defendant was a person who, in good faith, was seeking or obtaining emergency medical assistance for someone experiencing an overdose at the time the evidence was acquired.

¶ 26 The trial court also had before it a question of law on the issue of which party carried the burden of proof. As noted above, the trial court made the determination that the defendant carried the burden of proof to demonstrate that she was entitled to limited immunity under section 414(b), and the State contends that this court should agree with the trial court's determination. The defendant does not discuss the burden of proof in her appellee brief; however, this court must address the burden of proof in order to conduct an appropriate analysis of the trial court's findings.

¶ 27 The State correctly notes that the statute itself is silent on the burden of proof. The State also correctly points out that courts have consistently placed at least the threshold burden on the proponent of an immunity claim. Immunity is typically an affirmative defense and, as such, the individual or entity claiming the affirmative defense bears the burden of properly raising and

10

proving their immunity. See *Prough v. Madison County, Illinois*, 2013 IL App (5th) 110146, ¶ 20 ("[i]mmunity from suit under Tort Immunity Act is an 'affirmative matter' "); *Romero v. Ciskowski*, 137 Ill. App. 3d 529, 532 (1985) (fireman's request for leave to file affirmative defense of statutory immunity denied for failure to raise in a timely fashion); *People ex rel. Madigan v. Excavating & Lowboy Services, Inc.*, 388 Ill. App. 3d 554, 558 (2009) ("statutory immunity is an affirmative defense").

¶ 28    At the hearing, the defendant argued that placing the burden of proof on a defendant would require a defendant to waive his or her fifth amendment right against self-incrimination in order to obtain the protections of section 414(b) since a defendant is the only person that can say he/she was seeking medical treatment for an overdosing victim. The defendant further argued that it should be the State's burden to show that an individual was not being a good Samaritan and to prove that the State had the ability to charge a defendant. The trial court notably inquired on the defendant's argument that the State is "supposed to know that someone is being a good Samaritan how?" The defendant's response was that the law enforcement officers should have known because they were on the scene for the purpose of a well-being check and, separately, the state's attorney's office should have noted that the defendant should not have been charged because she qualified for limited immunity under section 414(b) because the vehicle was headed in the direction of a hospital.

¶ 29    This court cannot comprehend how the defendant making a statement that she was seeking medical attention for an overdosing victim is a waiver of her fifth amendment right. The fifth amendment provides, in part, that "[n]o person *** shall be compelled in any criminal case to be a witness against himself." U.S. Const., amend. V. An admission that an individual is overdosing could indicate that the overdosing victim may have been using illegal drugs; however, it is not an

11

admission of any illegal activity by the individual seeking to obtain medical treatment. Driving to a hospital or other medical facility is not an illegal activity. Seeking or obtaining aid for an overdosing victim is not an illegal activity. Asking or stating to law enforcement that an individual in your vehicle is experiencing an overdose and requesting assistance is not an illegal activity. "[T]he protection secured by invoking the fifth amendment must be confined to those instances where the witness has reasonable cause to suspect the possibility of subsequent prosecution from a direct answer." *People v. Prater*, 158 Ill. App. 3d 330, 336 (1987). A direct answer from the defendant in this matter that she was driving to a hospital or that she was seeking aid for an overdosing victim would in no way indicate the possibility of subsequent prosecution since these are not illegal activities and, thus, would not have required the defendant to waive her fifth amendment right.

¶ 30    Further, as the trial court correctly inquired, how is the State or emergency personnel to know the intent of an individual unless the individual so states? Simply heading in the direction of a hospital (and we would note heading in the opposite direction of two closer hospitals), only evidences the direction of travel and not the destination. The defendant, and not law enforcement or the State, is in the best position to demonstrate their intent and thus bring forth the affirmative defense of statutory immunity. Therefore, we find along the lines of other affirmative defenses of statutory immunity and hold that the trial court correctly determined that the defendant carried the burden of properly raising and proving her immunity under section 414(b).

¶ 31    We now address whether the defendant met her burden of proving her immunity under section 414(b). The defendant argues that this court should affirm the trial court's judgment granting her motion to dismiss since the suspected drug evidence in this case was acquired as a result of emergency medical assistance being obtained for an overdosing victim. A statute,

12

however, must be given its plain and ordinary meaning. *Scott v. City of Chicago*, 2015 IL App (1st) 140570, ¶ 11; *McGrath v. City of Kankakee*, 2016 IL App (3d) 140523, ¶ 21. Section 414(b) clearly states that "*[a] person* who, in good faith, seeks or obtains emergency medical assistance for someone experiencing an overdose shall not be charged or prosecuted." (Emphasis added.) 720 ILCS 570/414(b) (West 2016). In this matter, the evidence demonstrated that it was Reifschneider who contacted 9-1-1 seeking medical assistance for her niece. Reifschneider's call to 9-1-1 resulted in law enforcement stopping the vehicle on a well-being check, and based upon their observations, law enforcement obtained medical assistance for the overdosing victims. Every witness at the hearing stated that they could not recall the defendant ever indicating, at any time, that she was driving to a hospital or other location to seek or obtain medical treatment for the overdosing victim. Even when the defendant's vehicle was stopped, the testimonies of the law enforcement officers evidenced that the defendant did not state there was an individual overdosing in the vehicle or state that medical assistance was needed.

¶ 32    The trial court made the factual finding that the defendant was driving in the direction of Touchette Regional Hospital, but as stated above, driving in the direction of a hospital only evidences the direction of travel and not the destination. The defendant's recorded statement is the only evidence presented to the trial court on the defendant's intended destination. In her statement, the defendant stated that she did not know where she was going but that the individuals in the vehicle wanted her to head toward the highway. The trial court further found that both officers testified that the vehicle's direction of travel was toward one of the local hospitals, but their testimony also indicated that the defendant's vehicle was driving away from two closer medical facilities. Thus, the officers' testimony only evidences the direction of travel for the defendant's vehicle and not the defendant's destination. The evidence before the trial court was that the

13

defendant was diving in the direction of Touchette Regional Hospital but that she did not know where she was going. Therefore, the trial court had sufficient evidence to support its finding that the defendant was driving in the direction of Touchette Regional Hospital, which is known for its drug detox program, but there was no evidentiary basis for the trial court's finding that the defendant was seeking medical attention for the passenger suffering from an overdose. Therefore, the defendant failed to prove that she was a person who, in good faith, was seeking or obtaining emergency medical assistance for someone experiencing an overdose when the evidence in this matter was acquired.

¶ 33 Although not argued at the trial court's hearing, the defendant argues on appeal that, during her recorded interview, she informed Kocurek that she had performed mouth-to-mouth resuscitation on the niece while at the residence and that she only left the house because she was aware that medical care was on its way. According to the defendant's argument on appeal, "the trial court, after hearing all this evidence, made the reasonable conclusion that [the defendant], who had already provided medical assistance to [the niece], was continuing to seek medical care for her." We note, however, that there was no examination of any of the witnesses at the hearing concerning any prior medical assistance that the defendant may have rendered and the trial court made no factual findings pertaining to any prior medical assistance. The trial court, after considering all the evidence, only made the factual finding that the defendant was driving in the direction of Touchette Regional Hospital. There is nothing in the record to indicate that the trial court made any factual findings concerning the continuation of any alleged prior medical assistance. Therefore, the defendant fails to support her argument that the trial court made a reasonable conclusion that the defendant was continuing to seek medical care for the overdosing victim.

¶ 34    The defendant also argues that section 414(b) was triggered as soon as Reifschneider contacted 9-1-1 since the defendant's vehicle was stopped by law enforcement solely for the purpose of a well-being check and the illegal substance was recovered while emergency medical assistance was in progress for an overdosing victim. As the parties note, there is limited precedent that discuss the statutory immunity provided in section 414(b). The first case in which section 414(b) was addressed is *People v. Teper*, 2016 IL App (2d) 160063.

¶ 35    In *Teper*, law enforcement officers were informed of a vehicle that was stopped in traffic with the driver slumped over the steering wheel. *Id.* ¶ 5. When officers approached the vehicle, contraband and suspected heroin was clearly and immediately visible. *Id.* ¶ 8. The officers then administered emergency medical assistance for a suspected overdose. *Id.* The defendant in that matter was charged with possession of a controlled substance and filed a motion to dismiss pursuant to section 414(b). *Id.* ¶¶ 4-5. The trial court denied the defendant's motion to dismiss, and the appellate court affirmed, finding that section 414(e) of the Act barred the limited immunity of section 414(b) since there was an independent reasonable suspicion or probable cause for law enforcement's recovery of the evidence prior to or independent of the obtainment of the emergency medical assistance. *Id.* ¶¶ 36-39, 46.

¶ 36    The second case in which section 414(b) was addressed is *People v. Markham*, 2019 IL App (3d) 180071. In *Markham*, a friend contacted 9-1-1 to report that Markham was suffering from a drug overdose and then commenced cardiopulmonary resuscitation (CPR). *Id.* ¶ 4. When law enforcement arrived, Markham was still unresponsive and not breathing so they continued to perform CPR. *Id.* While performing CPR, law enforcement observed a syringe on a bedside table. *Id.* Markham eventually regained consciousness, and while being prepared to be transported to the hospital, he requested that law enforcement get his keys and wallet out of a closet. *Id.* In the closet,

15

law enforcement recovered suspected heroin. Markham was transported to a hospital and later charged with possession of an illegal substance. *Id.* In response, Markham filed a motion to dismiss pursuant to section 414(b). *Id.* The trial court granted Markham's motion to dismiss, and the appellate court affirmed, finding that the illegal drugs were discovered as a result of law enforcement entering the residence to provide emergency medical assistance and while the emergency medical assistance was still in progress. *Id.* ¶ 21.

¶ 37     We would note that the State's argument in *Markham* was that the obtainment of emergency medical treatment ceased when Markham regained consciousness and was able to ask for his keys and wallet before being transported to the hospital. The State argued that the illegal substance was discovered after, and not "as a result of," the emergency medical treatment being obtained by Markham. The *Markham* court stated that:

> "We conclude the State's narrow interpretation of the statutory phrase 'as a result' is flawed. The State's narrow interpretation would serve to eviscerate the undeniable purpose of the Act by discouraging those witnessing or experiencing an overdose from immediately calling for lifesaving emergency medical attention. In order for the Act to work and save lives as intended, those witnessing or experiencing a drug overdose must have immediate and absolute assurance that the courts will uphold the provisions of the Act by prohibiting prosecution for items observed by first responders at the scene after being summoned to that location to prevent a death by overdose. We hold that the Act provides broad and unconditional protection from the prying eyes of law enforcement present at the scene of an overdose, regardless of whether that location is a personal residence, a business, a vehicle, and so on." *Id.* ¶ 20.

16

¶ 38    While we agree with the *Markham* court that the undeniable purpose of the Act is to encourage the immediate calling for lifesaving emergency medical attention, we disagree that section 414(b) provides broad and unconditional protection for all individuals present at the scene of an overdose. Section 414(b) is clearly limited by its plain language to "[a] person *** seeking or obtaining emergency medical assistance" (720 ILCS 570/414(b) (West 2016)), and there is no indication within section 414(b) that its protection extends to individuals simply witnessing a drug overdose or being present when medical assistance is sought or finally obtained.

¶ 39    In determining a statute's plain meaning, a court may consider the problems sought to be remedied, the reason for the law, the purposes to be achieved, and the consequences of construing a statute one way or another in determining a statute's plain meaning. *People v. Gutman*, 2011 IL 110338, ¶ 12. However, a court must still construe a statute so as not to render any term superfluous. *Id.* ¶ 38. The term "[a] person who, in good faith, seeks or obtains emergency medical assistance" within section 414(b) conditions the availability of the limited immunity to an individual performing one of two specific acts, either seeking or obtaining emergency medical assistance. See 720 ILCS 570/414(b) (West 2016). In this matter, the defendant drove the vehicle that was occupied by persons in need of medical assistance. However, in the defendant's own words, she had no idea where she was going and the people inside the vehicle were directing her to drive toward the highway, not toward a hospital. Under these facts, there is no evidentiary basis to support the trial court's finding that the defendant "was seeking medical attention for the passenger suffering from an overdose." Accordingly, the trial court's finding that the defendant was entitled to immunity under section 414(b) was against the manifest weight of the evidence.

¶ 40    By our findings in this matter, we are not holding that the limited immunity provided by section 414(b) is confined to a specific number of individuals at the scene of an overdose who

17

could potentially be seeking or obtaining emergency medical assistance. Hypothetically, one person could be contacting emergency services, another could be administering CPR or other life-saving measures, while another could be standing out in the road to ensure that emergency services arrived at the correct location. As written, however, section 414(b) requires that each of these individuals demonstrate that their actions were, in good faith, for the purpose of seeking or obtaining medical assistance for the overdosing victim.

¶ 41 We are also aware that, without the protection of section 414(b), an individual may be hesitant in requesting or obtaining emergency medical assistance for an overdosing victim if there are other individuals at the scene that could potentially be charged. The legislature alone, however, has the power to amend and extend the limited immunity provided in section 414(b) to individuals beyond those reporting and obtaining medical assistance for an overdosing victim.

¶ 42 We would like to address one final point raised in the defendant's arguments on appeal. Along with the motion to dismiss, the defendant states that she filed a notice of intent for unavailable witness, requesting that the videotaped statements of two of the individuals in defendant's vehicle be allowed at trial for purposes of substantive evidence. The defendant notes that the trial court did not rule on the motion to introduce the statements and, as such, it was unclear whether or not the trial court was aware of the substance of either statement. The defendant further notes that "counsel did try to introduce them as substantive evidence" and that the "State also failed to mention the existence of these statements, nor did it attempt to include those statements on appeal."

¶ 43 Although the defendant cites the common law record demonstrating that her notice of intent was filed, there is no citation to the common law record to indicate that the notice of intent was ever set for hearing or any citation to the record of proceeding to indicate that the issue was raised

18

during the hearing on the defendant's motion to dismiss. In our review of the record of proceedings, we could not locate any request, reference, examination, or argument by the defendant concerning the two videotaped statements. If the defendant believed these statements were relevant to the defendant's claim of limited immunity, the burden was on the defendant to bring the statements to the trial court's attention, and in failing to do so, the defendant forfeited any argument on the issue before this court. See, *e.g.*, *People v. Naylor*, 229 Ill. 2d 584, 592 (2008).

¶ 44    Based on the above, we find that the limited immunity provided in section 414(b) is an affirmative defense of statutory immunity and that the person claiming the affirmative defense bears the burden of properly raising and proving their immunity. We further find that in order to obtain the limited immunity provided in section 414(b), there must be evidence to indicate that the person was either seeking or obtaining emergency medical assistance for an overdosing victim.

¶ 45    Although we offer great deference to a trial court's findings of fact, we find that the trial court's judgment granting the defendant's motion to dismiss was against the manifest weight of the evidence as the trial court's finding that the defendant was a person who, in good faith, was seeking or obtaining emergency medical assistance for an overdosing victim was not based on the evidence presented. As such, we reverse the judgment of the trial court granting the defendant's motion to dismiss.

¶ 46                                    III. CONCLUSION

¶ 47    For the foregoing reasons, we reverse the judgment of the trial court granting the defendant's motion to dismiss and remand for further proceedings consistent with this decision.

¶ 48    Reversed and remanded.

## No. 5-19-0127

| | |
|---|---|
| **Cite as:** | *People v. O'Malley*, 2021 IL App (5th) 190127 |
| **Decision Under Review:** | Appeal from the Circuit Court of St. Clair County, No. 17-CF-340; the Hon. Zina R. Cruse, Judge, presiding. |
| **Attorneys for Appellant:** | James A. Gomric, State's Attorney, of Belleville (Patrick Delfino, Patrick D. Daly, and Max C. Miller, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| **Attorneys for Appellee:** | James E. Chadd, Ellen J. Curry, and Christina M. O'Connor, of State Appellate Defender's Office, of Mt. Vernon, for appellee. |